Stuyvesant *v.* The Mayor, &c. of New-York.

---

STUYVESANT *vs.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW-YORK.

Where the complainant granted to the corporation of the city of New-York, certain lands, for the purposes of a public square, upon condition that such lands should forever be used and appropriated for the purposes of a public square exclusively, and upon the further condition that the corporation should immediately proceed to regulate the lands granted, and should inclose and improve the same in the manner specified in the conveyance thereof; and the corporation joined in such deed, by executing it under the corporate seal, and covenanted to stand seised of

Stuyvesant *v.* The Mayor, &c. of New-York.

the premises for the purpose of a public square, exclusively, and that such corporation would abide by, observe and perform the conditions imposed upon it by the acceptance of such agreement and conveyance ; *Held*, that the corporation was bound to perform the conditions specified in the conveyance, and was liable to respond to the complainant in damages for the non-performance thereof.

*Held also*, that the complainant had a right, at his election, to re-enter for a non-performance of the conditions of the deed ; or to bring an action for the damages sustained by the breach of the covenants of the corporation ; or to file a bill in equity, to compel a specific performance of these covenants.

*Held further*, that the covenant to grade and inclose and improve the premises, was not a continuing covenant, but a covenant which was to be performed within a reasonable time ; and that a recovery in an action, for the breach of that covenant, brought after the expiration of a reasonable time to perform the same, was a bar to any further recovery of damages for the breach thereof; and was also a bar to a suit in equity, for the specific performance of such covenant.

*Held likewise*, that the covenant that the premises should be held and used for the purposes of a public square, exclusively, was a continuing covenant ; and that a recovery in an action at law, for a breach of the covenant to grade, fence and improve the square, was no bar to a suit for the specific performance of the other covenant, and to compel the corporation to prevent the premises from being used for any other purposes than those of a public square.

Where, from the nature of the relief sought, performance of a covenant in specie will alone answer the purposes of justice, the court of chancery will compel a specific performance ; instead of leaving the complainant to an inadequate remedy at law.

The court of chancery has jurisdiction to compel the specific performance, by the defendant, of a covenant to make erections or improvements upon his own land, for the benefit of the complainant, as the owner of the adjoining property, and who has an interest in having such erections or improvements made ; and where the injury to the complainant, from the breach of the covenant, is of such a nature as not to be capable of being adequately compensated in damages.

Upon a general demurrer to the whole bill, if the complainant is entitled to any relief whatever upon the case stated in his bill, the demurrer will be overruled.

THIS was an appeal from a decretal order of the late assistant vice chancellor of the first circuit, overruling a demurrer to the complainant's bill for a specific performance. The complainant was the owner of a large tract of land in the city of New-York, bounded by the first avenue on the east and by the third avenue on the west, and extending on both sides of the second avenue from Twelfth-street to Twentieth-street. In the spring of 1836, the complainant having proposed to cede to the corporation about sixty-four lots, in the centre of this tract, for the purposes of a public square, to be bounded by Fifteenth-street on the

south and by Seventeenth-street on the north, and to extend one hundred and ninety feet east and the same distance west of the second avenue, the defendants applied to the legislature to authorize the alteration of the plan of the city accordingly. And thereupon the act of the 18th of May, 1836, was passed, directing the discontinuance of so much of Sixteenth-street as was included within the limits of the proposed public square, and establishing a public square to be called Stuyvesant square, with passages of thirty feet in width, upon the east and west sides of such square, for the use of the public. But the fourth section of the act declared that such act should not take effect until the lands contained within the limits of the square should have been ceded, by the owner or owners thereof, to the corporation of the city. In September, 1836, the complainant entered into an agreement with the corporation, under his seal and under the common seal of the corporation, whereby he granted to the corporation the land specified in the act of the legislature, upon the express condition that such lands should at all times and forever thereafter be appropriated to, and used exclusively for the purposes of a public square, to be called Stuyvesant square; and also upon the further condition that the corporation should *immediately* proceed to regulate the grounds between Fifteenth and Seventeenth-streets, and extending two hundred and twenty feet on each side of second avenue, and should inclose the lands on each side of the avenue and embraced in the square, in two parallelograms, with a railing similar to the one which should be placed around Union place; and should plant and improve such inclosures similar to the improvements made in Washington square; and that if such lands should, at any time thereafter, cease to be used for the purposes of such public square as aforesaid, then such conveyance, and every thing contained therein, should be void, and the complainant and his heirs might re-enter and hold the premises as of their former estate. And the corporation covenanted and agreed, with the complainant, to stand and be seised of the premises thereby granted, to the use therein declared, according to the true intent and meaning of said agreement; and that the corporation should and would well and

faithfully abide by, observe and perform the conditions imposed upon such corporation by the acceptance of such conveyance and agreement.

The corporation afterwards took possession of the lands granted, under that conveyance, as and for a public square. The complainant, after setting forth these facts, alleged, in his bill, that with a reasonable and honest endeavor, on the part of the defendants, the grounds which they had by the said agreement accepted and covenanted to regulate and improve, might have been so regulated, inclosed, planted and improved within one year from the date of such grant or agreement at farthest; but that they did not proceed forthwith, nor did they commence the regulation thereof for a long time afterwards; that after great delay a resolution was adopted, by the common council of the city, in January, 1838, and approved by the mayor, directing the street commissioner to advertise for estimates for regulating and inclosing Stuyvesant square, according to the conditions of the acceptance thereof, and to cause the work to be done, under the direction of the committee of public lands and places, as soon as practicable; and that $56,000 was appropriated for carrying that resolution into effect. The complainant further alleged that the premises were not regulated and graded previous to August, 1839, and that they had not, at the time of filing his bill, in December, 1841, been completely filled up, nor had they been inclosed with a railing, or planted or improved in any manner; but that individuals had been permitted to occupy parts of the square with shanties and pig-pens. The bill further charged that the object of his grant of the lands, for the public square, was to improve and embellish that part of the city, and thereby to enhance the value of the adjacent lands of the complainant, and to bring them into use as building lots; that in March, 1839, he commenced a suit at law, in the superior court of New-York, against the defendants, for a breach of their covenant, in not proceeding immediately, or at any time after the acceptance of the grant, to regulate the premises and inclose and improve the same, according to the terms and conditions of the grant and covenant: in which suit he claimed damages for the

loss he had sustained by the neglect of the defendants to complete the improvements, &c. within one year, as they might have done, to the amount of $150,000; that the defendants pleaded *non est factum* in that suit, with a notice that they would give in evidence that they had not broken the covenant contained in the said agreement, but had proceeded with due diligence to regulate the grounds, &c.; that the action thus commenced, by the complainant, was brought to trial, in April, 1840, and a verdict was rendered in his favor for $3056,25 damages; upon which verdict a judgment was afterwards rendered against the defendants; and that they subsequently paid the same. It was further alleged in the complainant's bill, that subsequent to such verdict and judgment the defendants had been applied to to perform and specifically execute the covenants contained in their agreement, but that they had refused to do so; insisting that by the said suit and judgment at law, they were absolved from all further liability on their covenants, and that they were at liberty either to abandon the square, and let the complainant re-enter upon the land, or to fence and regulate the same, for a public square, in such manner as they might deem proper. But the complainant charged in his bill, that upon the trial of the suit at law the defendants claimed and insisted that no other damages could be recovered, than such loss of income as the plaintiff could show he had sustained, from the time, when the defendants were in fault, until the time of the commencement of that suit; and that the judge before whom that suit was tried so charged the jury, at the instance of the defendants, and with the assent of the plaintiff's counsel.

The bill also stated that, from the difficulty and practical impossibility of showing damages in a suit at law, in such a case, the complainant's remedy at law was wholly inadequate; that Stuyvesant square still remained in the hands of the defendants, under the conveyance, and was by the act of May, 1836, a public square, which the defendants were bound to regulate, inclose, plant and improve, according to the terms of the cession and of their covenant and of the condition of their estate; and that the complainant had sustained, and was still sustaining, a large annual

loss of income, by reason of the defendants having left Stuyvesant square in such unimproved state. The complainant, therefore, prayed that the defendants might be compelled, by the decree of this court, to perform and execute their covenants specifically; and might be decreed to pay to him the damages which he had sustained, since the commencement of his action at law, by reason of their omission and default in performing their covenants; or for such further or other relief, as he was entitled to, under the circumstances of his case.

The defendants put in a general demurrer to the complainant's bill, for want of equity, and the demurrer was referred to the assistant vice chancellor of the first circuit, to hear and decide the same. He overruled the demurrer; and from that decision the defendants appealed to the chancellor.

*D. Graham, Jun.*, for the appellants. The act of the legislature of May 18, 1836, contemplates *an absolute and unqalified cession.* It expressly declares that "the act shall not go into effect, until the land shall have been ceded to the corporation." The term "cede" means a gratuitous conveyance. Let it be granted that the corporation had not power by their charter to purchase, would this language authorize them to purchase, and to insert the $240,000, as an item in their budget of taxes, to be paid by the people at large? and above all, to provide that no part of that taxation should fall on the complainant! What is the onerous condition, inserted in the deed of cession, but purchase money under another form? Is such a conditional cession a compliance with the act? We insist that it is in direct opposition to the act, and is absolutely void. Let it however be conceded, that the authority of the corporation is perfect, the instrument valid, and the cession properly made, what is the legal character of the deed, and how is it to be construed? In this deed, the grantor alone speaks, and he grants on *condition.* The words introducing all the qualifications of an absolute grant are *"Provided always, and this indenture is made upon the express condition."* (2 *Co. Litt.* 4, *Thomas' ed. Com. Dig. Condition A* 1, *A* 2.) From the days of Littleton, a uniform current of decisions

and commentaries, and the general sense of the bar, every way expressed, have declared these to be the appropriate words to create a condition, when they are the words of a grantor. (2 *Hilliard, ch.* 30, § 3. *Shep.* 122. *Hamilton* v. *Elliot,* 5 *Serg. & Rawle,* 375. *Co. Lit.* 216, *b.*) A non-performance of either of the obligations covered by this condition, in reasonable time, would be a breach, and the estate would cease, and that even without entering. It is, however, insisted that although this is truly a condition, yet, nevertheless, there are words of covenant following on the part of the corporation, and that the grantor has therefore a right to sue for the condition broken, and seek his remedy in damages under that covenant. (*Platt on Cov. p.* 17. *Geery* v. *Robson, Cro. Car.* 128.)

The corporation, at the close of the deed, " covenant with the complainant that they will stand seised of the premises, according to *the true intent and meaning of the indenture,* and will abide by, observe and perform the conditions *imposed upon them by the acceptance of that deed.*" This is nothing more than a formal acceptance of the cession, and is to be construed into an acceptance according to the statute. The corporation had no power to accept in any other way. It is impossible to consider this deed as any thing else, but a conveyance upon condition : the title to fail upon a non-performance of that condition, in a reasonable time ; and in this view, the question would be necessarily confined to the inquiry, had the complainant a right under the statute to annex such condition to his cession, and if he had, has he any other remedy for condition broken, but re-entry ? A bill for a specific performance, can surely never lie. The complainant treating the obligation of the corporation, expressed in the clause referred to, as a covenant to perform each and every one of the conditions as covenants, upon their refusal to perform them in reasonable time, brought an action of covenant against them at common law, and in declaring, assigned breaches on every condition " as a covenant," and in the very words of the condition or covenant ; so that the breaches were as *broad* as the covenant ; and then claimed enormous damages, demonstrating, so far as this was competent to do, that he sought entire

redress. The verdict obtained in that action is a bar to any additional redress, and as it is set forth in the bill, we can take advantage of it by demurrer, without being put to the necessity of pleading it. (*Phelps* v. *Garrow*, 3 *Edw*. 139.) It is alleged, however, that the conditions thus converted into covenants, are continuing covenants, and that the plaintiff may sue upon them *ad infinitum*. Of such covenants I am ignorant, and the books are silent. Judgment in an action upon covenants like these, I contend is final. And as a necessary consequence of the verdict and judgment recovered by the complainant, against the defendants, the title of the latter has become perfect and unconditional. According to the complainant's doctrine, he had a right to elect to consider the estate as at an end, and to re-enter, or to seek damages, admitting the continuance of the estate. The complainant has made his election and must abide by it. No case can be found, where the party, after recovering damages at law upon his entire covenant, or to any extent, has been allowed to file a bill likewise, for a specific performance. Nothing new has occurred since the complainant's suit at law, except the flat bar of a judgment. All the difficulties, which might make a resort to this tribunal necessary, were as well known to him then as now. The averment in the bill, that the defendant, in the court of common law, contended for certain erroneous doctrines and that the court charged accordingly, can never be allowed to control the record. If such erroneous doctrines were contended for and allowed, the complainant should have had them rectified, and so preserved his rights. It is of no importance, what law was contended for, or allowed. What the record in *law* imports cannot be changed by parol. The state of *facts* showing the introduction or exclusion of a cause of action, I admit may be shown, but beyond this the courts have not gone.

*Hamilton Fish*, for the respondent. The judgment at law, upon the very covenant now sought to be specifically enforced, is conclusive between the parties, as to the binding obligation of the covenant. The defendants appeared in the suit at law, interposed all their legal defences thereto, and submitted to the

judgment against them, in such suit. They are now estopped from denying the validity of the covenant; and from alleging that it was a fraud, or an excess of authority. But if the question were open, it could be urged that public squares, in large and populous cities, are not only ornamental to the city but essential to the health and comfort of the citizens, and are in the highest and strictest sense public benefits. If public benefits, they are in some degree and to some extent at least, proper objects of public expenditure; this extent, unless limited by express statute, must be left to the legislative discretion of the municipal body. The city may take ground for public squares, by assessment of loss and damages, as local improvements; they are then bound to use it as a public square, and improve it at the public expense: if so, it is no excess, but a due execution of their powers, to stipulate for it in the deed of cession. The condition in the deed in this case, is really, in substance, the very condition or trust which the law imposes, viz. use as a public square; only adding, what is clearly within the legislative discretion of the corporation, the mode of use and kind of improvement. But it is urged, that there is only a condition in the deed, and not a covenant, to improve the square. If the condition be lawful, the covenant to perform it cannot be unlawful. Where the corporation take land for a street and do not regulate and improve it, they may be indicted or compelled by an appropriate remedy to do so; they cannot say to the parties from whom they take the land, we will let it lie unimproved. So, in relation to a public square, the condition is not a matter of mere election in them, whatever the remedies of the grantor may be. But where they expressly covenant to improve the land they take for a public square, in a manner suitable to its intended use, how can it be said, with reason or justice, that this covenant amounts to nothing—that it is not an actual covenant? In a mere condition, the election is with the grantee, to perform or forfeit. Where there is a covenant to perform the condition, the election is with the grantor, to compel performance or to resume the subject. But it is contended, that having treated the obligation as a covenant, and brought an action on it and recovered

damages, the contract is merged and the condition is performed. If the condition be discharged, then the defendants hold the land absolutely; and the plaintiff can call on them for nothing. If such is the result, a court of equity will have lost all its antipathy to fraud, to taking undue and unconscientious advantage, to surprise and mistake, to hardship and oppression, if it does not struggle to give relief. It is true, that a recovery at law is a bar to all the damages which could lawfully be given in the suit, properly framed, upon the cause of action. Under this covenant, no more damages could have been lawfully claimed, under any declaration, than the loss of annual value up to the time of action brought. The injury here to the plaintiff, by the breach of covenant, was strictly an injury to the realty: it was like the injury of a nuisance, of an overflowing of lands, of a trespass, of shutting up or impeding a way. The complainant has sustained some injury. If the corporation thought fit to improve the square, according to the condition and covenant in their deed of cession, his injury for the future would not have existence. Under these circumstances, the deterioration of annual value was the legal measure of damage; the defendants' counsel at the trial at law so contended; the judge so decided; and the judgment was by both parties acquiesced in. There is a marked difference between injuries to personalty and to realty. If a trespasser invades my dwelling and destroys my furniture, the loss is complete at once, and admits of perfect compensation. But if he trespasses on my land by a wall, I am not entitled to recover as if the wall could not be removed; the trespasser may remove it, and the damages are therefore limited to the time during which it is an encroachment; and the action may be repeated if the encroachment be continued. (*Roswell* v. *Prior,* 2 *Salk.* 460. *Shadwell* v. *Hutchinson,* 2 *B. & Ad.* 97. *Holmes* v. *Wilson,* 10 *Durn. & East,* 503. *Trustees of Watertown* v. *Cowan,* 4 *Paige,* 512.)

So if my land be overflowed by my neighbor's mill pond, I may not recover the value of the land in fee, but only the annual injury, up to the time of suit; for he may lower his pond. So of any case of nuisance; or the violation of any easement

appurtenant to realty. This rule depends obviously not upon the form of the action, but upon the character of the injury as an injury to realty; thus, whether an action on the case be brought for stopping a way granted, or an action of covenant for stopping a way covenanted to be left open, the actual damage in each case being the same, the rule of damages at law must be the same.

The covenant in question is a continuing covenant. It continues as long as the estate to which it is annexed continues. The condition not being gone, although broken, the defendants will be liable in a new action, on the covenant for any subsequent breach; and therefore, damages ought not to be given prospectively and conjecturally, as the injury may cease immediately after the verdict and judgment. We do not complain of the verdict as erroneous, nor of the charge of the judge as wrong. We claim that it establishes the principle of a right to recover, but gives damages only as to the past, and not as to the future. This is clearly a case where, at law, the actual damages are incapable of any safe and precise assessment; they depend upon the effect of a matter of taste and convenience. Until the square has been made and completed according to covenant, the degree of benefit it will carry with it cannot be precisely known. And this very difficulty is the main reason of a resort to this court, and by numerous authorities it is a sufficient reason. (2 *Story's Eq.* 43, § 738.) There is no doubt of the jurisdiction of this court to decree a specific execution of the covenant. There is no more difficulty in decreeing its specific execution, than in decreeing the specific execution of any other matter of covenant. (*Holt* v. *Holt,* 2 *Vern.* 822. 1 *Ves.* 46. *City of London* v. *Nash,* 1 *Id.* 12; *S. C.* 3 *Atk.* 512. *Allen* v. *Harding,* 2 *Eq. Cas. Ab.* 17. See 2 *Eden,* 128, *and* 8 *Ves.* 160. *Franklin* v. *Tuton,* 5 *Madd.* 285.)

THE CHANCELLOR. The first objection to the complainant's claim, to a specific performance, which is urged by the appellant's counsel in this case, is that the conditional grant of the land, to the corporation, as stated in the complainant's bill, is not

a compliance with the fourth section of the act of May, 1836; so as to authorize the alteration of the map and plan of the city. The condition that the lands should revert to the grantor, in case they should not be used for the purposes of a square, does not appear to be inconsistent with the object and intention of the legislature. For, under this act, the city corporation would have no right to use the lands for any other purpose than that of a public square; even if the grant was absolute and unconditional. There is more difficulty, however, in bringing the other conditions of the grant within the act of May, 1836. It certainly could not have been the intention of the legislature to change the plan and map of the city, absolutely, on the receipt of a mere nominal grant of the lands, to be included in the square, upon such onerous terms and conditions that the public might be deprived of the use of the streets, as originally laid out by the commissioners, and also of the benefit of the public square with substituted passages on the east and west sides thereof. That is a question, however, which does not necessarily arise upon this bill for a specific performance. For if the defendants have not the legal right, under the act of May, 1836, to discontinue portions of Sixteenth-street, and to make the contemplated square, until there is an absolute grant of the land contained within the limits of the square, the court may make it a condition of the decree, for the specific performance of the covenant to grade, inclose and improve the square in the manner agreed upon by the parties in 1836, that the complainant shall make an absolute grant of the land to the corporation for the purpose of the public square; so as to bring it within the letter of the act of May, 1836. And it would be wrong to turn the complainant out of court upon that ground alone, where the objection is raised, for the first time, upon the argument of a general demurrer to the bill.

It is true, the bill shows that the defendants have actually forfeited their right to the land granted for the square, by the non-performance of the conditions upon which it was granted. One of those conditions was that the corporation should immediately proceed to regulate the grounds, and enclose the square

on each side of the avenue with a particular description of railing, and make the other specified improvements in the square. And from the allegations in the bill, it is perfectly evident that this condition of the grant has not been performed by the corporation, in good faith, either in form or in substance. The application, for a specific performance, however, is entirely inconsistent with the supposition that the complainant intends to insist upon the forfeiture. · And the objection that there is no express waiver of the forfeiture, in the bill, appears to be an objection of form merely ; which should in this case, as I think, have been raised by a special demurrer.

The objection that the provision in the deed of cession, that the corporation ˙ should immediately proceed to regulate the lands granted for the purpose of a public square, and should enclose and improve them in a particular manner, is a condition and not a covenant, cannot be sustained. It is true, the regulating, inclosing and improving of the land, is made a condition upon which the title of the corporation to the lands depends. But other language is used in the conveyance, which amounts to a covenant on the part of the corporation to perform such condition. The covenant to perform, abide by, and observe the conditions imposed upon the defendants by the acceptance of the deed, and which they have executed under their corporate seal, is an express covenant, not only to stand seised of the premises for the purposes of a public square, but also that they shall not be used for any other purpose ; and that they will immediately proceed to regulate, enclose, and improve the premises, according to the conditions specified in the deed. (*Shep. Touch.* 122. *Co. Litt.* 203, *b.*)

The remaining question, and which is the important one in this case, is whether the instituting a suit at law for the breach of this covenant, and obtaining a satisfaction in damages in that suit, is a bar to a bill filed here for the specific performance of the covenant. For I have no doubt as to the right of the complainant to come into this court for the specific performance of such a covenant, in the first instance, upon a waiver of the forfeiture arising from the non-performance of the condition. The

true rule on the subject of decreeing the specific performance of a covenant in such cases, is, that where, from the nature of the relief sought, performance in specie will alone answer the purposes of justice, this court will compel a specific performance, instead of leaving the complainant to a remedy at law, which is wholly inadequate. The court has jurisdiction, therefore, to compel the specific performance, by the defendant, of a covenant to do certain specified work, or to make certain improvements or erections upon his own land, for the benefit of the complainant, as the owner of the adjoining property, who has an interest in having such work done or such improvements or erections made; and where the injury to the complainant, from the breach of the covenant, is of such a nature as not to be capable of being adequately compensated in damages. (*Storer* v. *Great Western Railway Company,* 2 *Young & Col. N. C.* 48.)

When the condition upon which the land was granted, for the purposes of the square, was broken, by the neglect of the defendants to proceed immediately to regulate the lands granted, and to enclose and improve them within a reasonable time, according to the condition of the grant and the obligation of their covenant, the complainant had the right, at his election, either to waive the forfeiture and file his bill here, to compel the defendants specifically to perform their covenant to regulate, inclose, and improve the land, and to pay him the damage they had sustained or might sustain by their neglect to do it within the year, which is stated to have been a reasonable time for that purpose, or to insist upon the forfeiture, and repossess himself of the land, for a breach of the condition. He also had a right to resort to a suit at law, upon the covenant of the defendants to proceed immediately to regulate, inclose and improve the land for the purpose of a square, and for his benefit as the owner of the adjoining lands. But this was an entire, and not a continuing covenant; and it had been wholly and entirely broken at the time of the commencement of the suit at law, against the defendants. For the declaration in that suit, as well as the bill in this, averred that the defendants might and could have regulated, inclosed and improved the premises, in the manner pre-

scribed in the covenant, within one year from the date of the grant. And the breach assigned was that the defendants had not proceeded to regulate the premises, nor had they inclosed or improved the same, down to the time of the commencement of that suit; which suit was commenced nearly three years after the making of the grant. In this respect, the covenant of the defendants is like a covenant to build a house, for the benefit of the covenantee, or for the enhancement of the value of his property, within a specified time; or as soon as it can reasonably be done. There, if the person claiming the benefit of the covenant waits until the time for building the house expires, and then brings his suit at law, to recover damages for the breach of covenant, and obtains a verdict and judgment in that suit, his remedy upon the covenant is exhausted; and no new action can be brought, for not building the house after the expiration of the time specified in the covenant.

In the case under consideration, the effect of exhausting the remedy of the complainant, by a suit at law upon the covenant, after an absolute and entire breach thereof, was to leave the defendants at liberty to inclose and improve the premises in such manner as they might deem expedient, and without violating the other covenant in the deed of cession; to wit, that the lands granted should at all times and forever thereafter be appropriated to, and used exclusively for, the purposes of a public square. This last covenant is a continuing one; upon which actions may be sustained from time to time, as often as the defendants appropriate the property, or suffer it to be appropriated, to any purpose other than that of a public square, until the complainant thinks proper to enforce the forfeiture, for breach of the condition. The amount of the recovery in each successive action, upon that covenant, would be only the damages for breaches which had occurred at the time of the commencement of the suit. And the recovery of such damages would not be a bar to an action for a subsequent misappropriation of the premises, to purposes prohibited by the covenant. But upon the covenant to proceed immediately to regulate the grounds, and to inclose and improve them in a particular manner, the complainant

should have claimed damage, in his action at law, for the breach of that covenant, to the extent of the injury which his property would probably sustain, by permitting the defendants to inclose and improve the square in such manner as they might deem proper; instead of inclosing and improving it in the particular manner specified in the deed of cession, and within the time required by the condition of that deed. And if the court, before which that action was tried, either with the complainant's assent or otherwise, adopted a wrong rule of damages, for the breaches of the covenant which had occurred at the time of the commencement of that action, this court has not the power to correct the error, by decreeing a performance of the covenant; for the entire breach of which covenant the recovery in that action was, in legal contemplation, a full satisfaction.

Although the claim of the complainant, to have a specific performance of the covenant for the breach of which he has already obtained a legal satisfaction in the suit at law, cannot be sustained, I think this general demurrer to the whole bill is not well taken. For the bill shows a breach of another of the covenants, in relation to the uses to which the premises embraced in the grant shall be appropriated. And under the alternative prayer, for such other relief as the complainant may be entitled to, I think he may claim a specific performance of the condition, and covenant, that the lands granted for the purposes of a public square, shall be appropriated and used for that purpose exclusively. The bill states that the lands granted for a public square, have never been inclosed or improved, in any manner whatever, down to the time of filing of such bill, and that individuals have been permitted to occupy parts of such lands with shanties and pig sties; although, as the bill alleges, the lands granted for Stuyvesant square still remain in the hands of the corporation, under the conveyance from the complainant. This is clearly such an injury to the complainant, in reference to his adjacent property, as will authorize this court to decree a specific performance of the covenant that the premises shall be used for the purpose of a public square exclusively; and, in such decree, to require the defendants to remove these nuisances,

and to keep off all intruders, upon the premises, whose occupation of any parts thereof is inconsistent with the purposes for which the lands were granted. Although the permitting of such a use of the premises, involves a forfeiture of the grant in case the complainant thinks proper to enforce the forfeiture, for this breach of the condition upon which the lands were granted, he is not bound to claim the forfeiture; but may resort to his suit to compel a specific performance of this covenant. And without re-entering for the breach of the condition, the complainant cannot himself remove these nuisances, without committing a trespass upon the defendants' property; nor can he keep off intruders who may settle upon the premises. It is true he may bring successive suits against the defendants, for their breaches of the covenant that the lands shall be used exclusively for the purpose of a square. For under that continuing covenant the defendants are bound to see that the premises are used for no other purpose. But the remedy at law is wholly inadequate to the protection of the complainant's rights, in this respect; and the nature of the injury is such as to be incapable of an adequate compensation in damages. The defendants, therefore, if they do not think proper to inclose and improve the premises, immediately, in the manner specified in the deed of cession, must at least do so much as is necessary to prevent the lands appropriated for a public square, from being used by intruders, or others, for any other purpose; to the injury of the complainant's adjacent property.

For these reasons, although I cannot agree with the assistant vice chancellor, in the conclusion that the convenant to inclose and improve the premises in a particular manner, and without unreasonable delay, was not merged in the recovery in the action at law, so as to deprive the complainant of the right to come here for a specific performance of that covenant, still the decretal order, overruling the general demurrer, as a defence to the whole relief sought by this bill, must be affirmed. For upon a general demurrer, if the complainant is entitled to any relief whatever in this court, upon the case made by his bill, the demurrer must be overruled. The decretal order appealed from

must, therefore, be affirmed with costs; but without prejudice to the right of the defendants to insist, in their answer, that the judgment, in the action at law, is a bar to so much of the relief, sought by the bill, as seeks a specific performance of the covenant to proceed immediately and regulate the lands granted for a public square, and to inclose and improve them in the particular manner specified in the deed of cession, or for subsequent damages on account of any supposed breach of that particular covenant.

Order accordingly.