Between PATRICK H. WOODRUFF and DICKINSON WOODRUFF, appellants, and THE TRENTON WATER POWER COMPANY, respondents.

The owner of a valuable farm, situated on the river Delaware, conveyed to the Trenton Delaware Falls Company, their successors and assigns, a portion of his farm adjoining the river, and across which they had located their main raceway, "subject nevertheless to the following proviso : that if the said main raceway shall not be made on said premises in conformity to the act incorporating said company, the said lands and premises shall revert to the said George Woodruff, his heirs and assigns. And also, that the said party of the second part shall erect, maintain, and keep in good repair, a safe, con_venient, and substantial bridge across said main raceway, at a place to be designated by the said grantor ; and also cause to be made and kept in order a convenient landing place on the side next the river Delaware, so that wagons may at all times safely pass over the same ; and shall also erect and maintain all necessary fences across the said main raceway, together with

fences across the said premises, and shall also permit the said party of the first part to use the said raceway to give drink to his cattle, and also to take ice therefrom to fill his ice-house." The grantees cut the main raceway, and it came into the possession of the defendants, as assignees of the grantees, by virtue of several acts of the legislature. The bill alleges that the grantees and the defendants have always refused to perform their said covenants and agreements, and prays a specific performance and compensation for the injury sustained.

*Held*, 1st, that if the matters mentioned in the proviso of the deed could be legally regarded as covenants, and as such be enforced at law, the court would have no difficulty in declaring them to be covenants relating to the *realty* and running with the land, and that both the liability to perform them, and the right to take advantage of them, passed to the *assignee* of the land and of the reversion. Such a construction would not conflict with the principles established in *Spencer's case*, 5 *Coke* 16.

2d. That there are no covenants contained in the deed on the part of the grantees. A *condition* is quite distinct from a *covenant*. The language is appropriate to create a condition, and as if to avoid any doubt, the legal consequences of a breach or violation of the condition is inserted.

Upon *covenants*, the legal responsibility of their nonfulfilment is, that the party violating them must respond in damages ; the consequence of the nonfulfilment of a condition is a forfeiture of the estate.

This court cannot enforce the specific performance in a deed, the nonperformance of which works a forfeiture of the estate. The grantor has fixed his own remedy, and can forfeit the estate at his pleasure.

The bill alleges, that George Woodruff was in his lifetime seized and possessed in fee simple of a certain farm, situate in the township of Ewing, in said county, called Oaklands, containing about one hundred and eighty acres, upon which was situate a valuable mansion house and outbuildings, and upon which he resided with his family for many years next preceding his decease; that the said farm was situate upon the river Delaware, and had an extended front upon and along the same, running down to low water mark, which afforded at all points an easy and convenient access to said river, so that it could be and was much resorted to and used by said George Woodruff and his family, and persons occupying and using said farm under him, for the purposes of bathing, boating, fishing, watering cattle, and procuring ice in winter, and for other purposes of business and pleasure. And the value of said farm, both as a desirable residence and for the purposes

of cultivation, was much increased by its situation upon
said river, and the ease and convenience with which the
advantages thereof could be used and enjoyed ; that by
an act of the legislature of this state, passed on the six-
teenth day of February, in the year of our Lord one thou-
sand eight hundred and thirty-one, entitled, " An act to
incorporate a company to create a water power at the city
of Trenton and its vicinity, and for other purposes," a
company was incorporated, by the name of " the Trenton
Delaware Falls Company," for the purposes and with the
powers and privileges therein described, and by that name
were by said act declared to be a body politic and corpo-
rate in fact and in law, and among other things in and by
said act mentioned, the said company were thereby em-
powered, in order to create a water power, to erect a wing-
dam in the Delaware river between the mouth of the As-
sanpink creek and the head of Wells' falls, and also to
cut a main raceway from said wingdam, in and along and
near the bank of said river, to a point below the city of
Trenton, and also lateral raceways from said main race-
way to the river Delaware ; that the said company was
duly organized under the said act, and went into operation
under the same, and proceeded to erect and make, and
did erect and make said wingdam and said main raceway,
and other works, in pursuance of the authority given them
in and by said act ; that the route of said main raceway,
as laid by the said company, was across that part of said
farm of the said George Woodruff which lay next the
said river Delaware, and it was necessary for said com-
pany to have a portion of said lands, in order to cut and
make said raceway ; that the said company applied to the
said George Woodruff to sell and convey to them that
part of his said farm which lay adjoining to said river, in
order that they might make thereon that part of their
main raceway which lay across his said farm, according
to the route designated and fixed by said company under
their charter, and the said George Woodruff agreed to do

so for a consideration agreed upon between him and said company, and which is expressed in the deed which he executed to them, as is hereinafter stated, to wit, the sum of three hundred dollars and of certain privileges granted to him, and of certain covenants and agreements to be performed and kept on the part of said company. and in said deed contained, as is hereinafter more fully expressed and set forth ; that in pursuance of said agreement, the said George Woodruff and Jean his wife, on or about the twenty-sixth day of January, in the year of our Lord eighteen hundred and thirty-two, did, in and by a certain deed of conveyance, bearing date on the day and year last aforesaid, made between the said George Woodruff and Jean his wife, of the first part, and the said the Trenton Delaware Falls Company, of the second part, in consideration of the sum of three hundred dollars, to them the said grantors paid, and of the covenants and agreements in said deed contained, grant, bargain, sell and convey unto the said company, their successors and assigns, in fee simple, the following described portion of said farm, being all that part thereof which lay adjoining and next to the river Delaware, to wit : beginning at low water mark of the river Delaware, at line of lands of John Titus ; thence by said line north, forty-four degrees east, one chain and twenty-five links ; thence north, fifty-nine and a half degrees west, four chains ; thence north, fifty-nine degrees west, two chains ; thence north, sixty-one degrees west, three chains ; thence north sixty-six degrees west, twelve chains and six links, to Hill's line ; thence by said line south, thirty degrees west, one chain and twenty links to low water mark ; thence by low water mark, the several courses thereof, to the place of beginning, containing two acres and sixty-three hundredths of an acre, subject nevertheless to the following proviso and covenants, contained in said deed, and therein set forth, as follows, to wit : " subject nevertheless to the following proviso, that if the said main raceway shall not be made

on said premises in conformity to the act incorporating said company, the said lands and premises shall revert to the said George Woodruff, his heirs and assigns. And also, that the said party of the second part shall erect, maintain, and keep in good repair a safe, convenient, and substantial bridge across said main raceway, at a place to be designated by the said George Woodruff, and also cause to be made and kept in order a convenient landing place on the side next the river Delaware, so that wagons may at all times safely pass over thereon, and shall also erect and maintain all necessary fences across the said main raceway, together with fences across the said premises where the lines of the aforesaid John Titus and Jasper S. Hill cross the said main raceway, and shall also permit the said party of the first part to use the said raceway to give drink to his cattle, and also to take ice therefrom to fill his ice-house, said party of the first part so to use said privileges that no damage shall accrue to said raceway," which said deed was afterwards, and on the day and year last aforesaid, duly acknowledged by said party of the first part, and delivered to the said company, and recorded in the clerk's office of the county of Hunterdon, in which said lands were then situate, and your orators pray leave to refer to said record or to said deed, if the same shall be produced; that the said company, shortly after the said deed was executed and delivered to them as aforesaid, entered upon and took possession of said lands and premises thereby conveyed to them, and cut and made, through and across the same, the main raceway, which by the said act they were empowered to make from their wingdam to a point below Trenton, as aforesaid, and that said premises have been ever since held and occupied for their own use by the said company; or those claiming under them; that the said company, having made and erected their said main raceway and other works under their said charter, thereby created an extensive and vauable water power, which they used and leased for manu-

facturing or other purposes, and that they received from time to time a large income therefrom ; that some time in the year eighteen hundred and forty-three, it was alleged that the said company had become insolvent, and a bill was then filed against them in this honorable court by Andrew Carrigan, one of their creditors, under the act entitled, " An act to prevent frauds by incorporated companies," and such proceedings were had thereon that by an order of this court, made in said cause, James Ewing, Thomas J. Stryker, and Philemon Dickinson were appointed receivers of said company, with full powers to sell, convey, and dispose of the real and personal estate, works, and franchises, of said company, according to law, as in and by said proceedings, now on file in this court, and to which your orators pray leave to refer, will fully and at large appear. And the said receivers did, on or about the twentieth day of February, in the year of our Lord eighteen hundred and forty-four, sell the real estate (including said raceway) and the works and franchises of said company at public sale, to the highest bidder, and did afterwards, and on or about the eighth day of March, in the year last aforesaid, execute and deliver to the purchasers thereof a deed conveying to them the said real estate, raceway, works, and franchises in fee simple ; that before the said sale was made, to wit, on the fifteenth day of February, in the year of our Lord eighteen hundred and forty-three, an act was passed by the legislature of this state entitled, " An act to relieve the creditors of the Trenton Delaware Falls Company," whereby it was, among other things, enacted and declared that the purchasers of the real estate, franchises, and works of said company should hold the said works, franchises, and real estate as a joint stock company, in the same manner as the original stockholders held the same, provided that they should not extend their capital beyond the limits of the charter, or in any wise contravene the provisions thereof ; and provided further, that after said purchase, the said company

should be known as "the Trenton Water Power Company," and by that name might sue and be sued, and have a common seal, and exercise all its corporate powers; that by virtue of the said last mentioned statute, the corporate name of the said corporation was, upon the sale of the said real estate, works, and franchises by the receivers as aforesaid, changed, from the title given to it, in and by its original charter, to the name of "the Trenton Water Power Company," by which last mentioned name the said corporation was thereafter to be known in law, and to sue and be sued, and to exercise all its corporate powers, and that the purchasers of the said real estate, works, and franchises were, under said act, to hold and did hold the same as a joint stock company, in the same manner as the original stockholders held the same. And the said purchasers did accordingly, on or about the second day of January, in the year of our Lord eighteen hundred and forty-four, organize themselves under the name of "the Trenton Water Power Company," and by that name, as a body politic and corporate in law, have ever since claimed, held, exercised, and enjoyed, and do still claim, hold, exercise, and enjoy, subject however to the provisions of the original charter, all the corporate powers of the said corporation, and all the real estate, works, and franchises so as aforesaid sold and conveyed by said receivers, and in which is included the real estate sold and conveyed by the said George Woodruff, in manner aforesaid; that the whole river front, which the said farm of the said George Woodruff, formerly had upon the river Delaware was, by the conveyance by him to said company, of the premises above described, and the making of said main raceway through and across the same, entirely cut off and taken away, and he and all persons holding and using said farm were deprived of all benefits and advantages formerly enjoyed from an easy access to said river; that the said George Woodruff held and possessed said farm, as the owner thereof in fee simple, from the time of the afore-

said sale of a part thereof to said company until some time in the month of September, in the year of our Lord eighteen hundred and forty-six, when he departed this life, leaving a last will and testament, executed in due form of law to pass real estate, and therein appointing his wife, Jean Woodruff, and your orator, Patrick Houstoun Woodruff, the executors thereof; that the said Jean Woodruff, desiring not to act as executrix of said will, your orator, Patrick Houstoun Woodruff, duly proved the same before the surrogate of the county of Mercer aforesaid, and received from him a grant of letters testamentary thereon, and took upon himself the execution thereof, as by said letters, bearing date on the fourteenth day of September, in the year of our Lord eighteen hundred and forty-six, now in your orator's custody and ready to be produced, will fully appear; that in and by said last will and testament, the said George Woodruff devised his said farm unto your orators and their two brothers, Robert J. Woodruff and Thomas M. Woodruff, in fee simple, subject to the life estate therein of his wife, the said Jean Woodruff, who afterwards, in the month of April, in the year of our Lord eighteen hundred and forty-eight, departed this life, and to the payment of a certain legacy unto their sister Mary, wife of Charles L. Pearson, which hath since been fully paid and discharged, and that afterwards, and on or about the fourteenth day of October, in the year of our Lord eighteen hundred and fifty-one, the said Robert J. Woodruff and Thomas M. Woodruff, conveyed all their estate and interest in said farm unto your orator, Patrick Houstoun Woodruff, in fee simple, as by their deed of conveyence to him, bearing date on the day and year last aforesaid, and now in his custody and ready to be produced, will appear, by means whereof your orators are now the owners, in fee simple, of the said farm, and of the estate and interest which said George Woodruff had therein at the time of his decease, and they are now in the actual possession and enjoyment thereof; that

the said George Woodruff, in his lifetime, and your orators and their two brothers, herein before named devisees as aforesaid, have at all times kept and performed all covenants and agreements in the said deed from said George Woodruff contained on his and their part to be kept and porformed ; that by reason of the matters herein before set forth, and in particular by reason of the contracts and covenants contained in the said deed from the said George Woodruff to the said the Trenton Delaware Falls Company, the said company were bound to erect, maintain, and keep in good repair a safe, convenient, and substantial bridge across said main raceway, and also a convenient landing place on the side next the river Delaware, so that wagons might at all times pass over thereon from the said farm of the said George Woodruff, and also to erect and maintain fences across said main raceway and said premises, so conveyed by said George Woodruff to said company, at the places and in the manner expressed in said deed, and herein before mentioned and set forth. And further, that the name and organization of the said company having been changed, as is herein before set forth, and said company being now known in law by the name of " the Trenton Water Power Company," that the said the Trenton Water Power Company are bound to erect and maintain, and keep in good repair, the said bridge, landing place, and fences, and in all things to perform and keep the said covenants and agreements in said deed contained ; but neither the said the Trenton Delaware Falls Company nor the Trenton Water Power Company have ever performed or kept said covenants and agreements, in whole or in part, but have wholly failed and neglected so to do.

And the said George Woodruff, in his lifetime, frequently applied to the said the Trenton Delaware Falls Company and to the Trenton Water Power Company, and requested them to keep and perform said covenants, and to erect and maintain said bridge and landing place

2 T*

and fences in the manner required by said covenants, and in all things to fulfil the requirements thereof, and they frequently promised to do so, but have always failed and neglected to attend to the same. And since the decease of the said George Woodruff, your orators and their brothers, herein before named, have, by themselves and their agents, frequently applied to the said the Trenton Water Power Company, and have pointed out the place at which they wished the bridge from said farm across said main raceway to be erected, to wit, at the place opposite to the end of the lane running from the feeder of the Delaware and Raritan canal to the main raceway aforesaid, and have requested said company to perform said covenants and to erect and maintaim said bridge, landing place, and fences, and also to pay them a compensation or damages for the injury sustained from the failure of said company to erect and maintain the same, as by said covenants they were bound to do ; and the said company frequently promised them that they would do so, or if it would be equally satisfactory, that the company would pay your orators and their co-devisees aforesaid, a sum of money in lieu of the performance of said covenants ; but the said company have always failed to keep said promises, and have never erected any bridge, landing place, or fences upon said premises, nor in any manner performed the said covenants, or any part thereof ; that from the time of the making of said main raceway until the present time, there has been no bridge or fences across said main raceway upon said farm erected or maintained by the said company, either under its former or its present name, and the said George Woodruff and your orators, and all persons holding and using said farm under him or them, have in various ways suffered, and your orators do still suffer, much inconvenience and loss for the want of the same ; that for the want of such bridge and landing place, they have not been able to cross said main raceway from said farm to said river with their cattle, horses and wagons, as

they otherwise might have done, and which would have been of material service to them; that for want of the fences which said company were bound to erect and maintain as aforesaid, the said George Woodruff, in his lifetime, and your orators since his decease, have been compelled either to make and maintain said fences at their own expense or to suffer their lands to be exposed and open to trespass, and they have experienced much annoyance and loss from trespasses by cattle and persons, and have been put to great expense in putting up fences, by reason of the failure of said company to make and maintain the fences which by their said agreement they were bound to make and maintain as aforesaid; that the said company, having been frequently applied to, as aforesaid, to keep and perform the said covenants, and having promised to do so, but without in any manner keeping such promise, your orators, together with their brothers before named, who had not then parted with their interest in said farm, did, on or about the fifth day of December, in the year of our Lord eighteen hundred and fifty-one, caused a notice and requirement in writing to be served upon the president of the said the Trenton Water Power Company, pointing out the place where they wished the said bridge to be built across said main raceway upon said farm, being the same place hereinbefore in that respect mentioned, and calling upon said company to keep and perform the covenants in said deed contained, and to erect and maintain said bridge, landing place, and fences, and to pay unto them damages or compensation for the said company's past neglect to perform said covenants, and the said company thereupon promised to do so, but have wholly failed and neglected to do it; that the full and faithful performance of said covenants by said company, according to the true intent and meaning thereof, would afford your orators a direct access to said river with their cattle, horses, and wagons, and would give them many advantages in the use and enjoyment of their said farm

of which they are now deprived, and would save them from much annoyance and loss, which they have long suffered for the want thereof, and would also increase the market value of their farm, in case they wished to sell the same; that the said George Woodruff having, by the deed hereinbefore mentioned, conveyed to said company that part of his said farm therein described for the consideration, in part, of having fences kept up and maintained as aforesaid, and a bridge and landing place built and maintained in good order from his said farm across the main raceway aforesaid, and the said company having taken said land so conveyed to them, and used and enjoyed the same from that time to the present, that the said company were bound to keep and perform said covenants with the said George Woodruff in his lifetime, and are now bound to keep and perform the same with your orators, who are his heirs and devisees, and who now hold and possess the said farm in fee simple, by title derived from him in manner herein before set forth; and that the said company are also bound to pay to your orators compensation or damages for the past omissions of said company to keep and perform the said covenants, &c.

The defendants answered the bill, and evidence was taken on both sides, but the points on which the case was decided sufficiently appear from the above synopsis of the bill. The cause was argued in the Court of Chancery, February term, 1855.

*J. F. Randolph*, for complainants.

The complainants are entitled to the covenants in the deed. They are covenants as to realty, and run with the land. *Platt on Cov.* 523, 529, 232; *Spencer's case*, 5 *Co. Rep.* 17; 1 *Smith's Lead. Cas.* 22; 5 *Halst. Rep.* 20.

The complainants, as *devisees*, are entitled to the benefit of the covenants. 2 *Bac. Ab.* 62. No form of language necessary. The acceptance of the deed is sufficient, although not signed by the party covenanting.

The defendants are privies of the Trenton Delaware Falls Company, who made the covenants.  *Carrigan's case,* 1 *H. C. R. Spenc. Rep.* 659.

Complainants are entitled to specific performance and damages. 2 *Story's Eq. J.* § 721 (*a*) ; *Storer* v. *G. W. Railway,* 3 *Young & Collier* 48, 53.

As to time.  The deed is dated January, 1832, and the bill filed 13th June, 1853.

The time is accounted for.  The parties were continually negotiating.  The company was embarrassed.

But defendants can take no advantage from the lapse of time.  They hold by the same deed which contains the covenant.  When they show their title they show their obligation.  *King* v. *Morford, Saxton's R.* 279 ; 1 *G. C. R.* 106 ; 4 *J. C. R.* 287 ; 2 *Story's Eq. J.* 716 (*notes*).

*C. S. Green* and *W. L. Dayton,* for defendants.

1. The deed contains no covenant.  There is a condition, but no covenant.  The language is plain, *subject nevertheless to the following proviso.*  It is a condition merely according to all the authorities. 2 *Com. Dig., title Condition A.* 2 ; *Bouv. Dic., title proviso ; Platt on Covenants* 36, 37, 28.

2. If it can be construed as a covenant it is personal, and does not run with the land.  The language is that the grantees shall build bridge, &c., but the word *assigns* is not used.  The defendants are not bound according to first resolution in *Spencer's case.* 5 *Coke* 16 ; *Platt on Covenants* 471 ; 8 *Cow.* 269.

If the word *assigns* was used, the defendants are not bound according to second resolution in *Spencer's case.* 5 *Coke* 16 ; *Platt on Cov.* 473 ; *the Mayor of Congleton* v. *Pattison,* 10 *East* 130. The bridge and wagon way and landing place are all to be erected outside of the land conveyed. *Cockson* v. *Cox, Cro. Jac.* 125. Equity will follow the law.  *Keppell* v. *Bailey,* 2 *Miln & Kean* 517 ; 8 *E. Cond. C. R.* 111,125.

3. Court will not decree specific performance to build

2 *Story,* § 725 ; 3 *Atk.* 512 ; 2 *B. C. C.* 341; 3 *B. C. C.* 156 ; *Ib.* 159 ; 3 *Ves.* 185.

4. Remedy complete at law ; lapse of time ; change in the character of the land, so as to render it oppressive to compel defendants to perform, are reasons against a decree.

5. The place where the bridge was to be built was to be fixed by G. W., the grantor. He never did fix it.

Counsel further cited *Hedden* v. *Struten,* 5 *Pick* 528 ; 4 *Kent's .Com.* 122, 125.

At the term of June, 1855, a decree was made dismissing the complainant's bill with costs. From this decree an appeal was taken. The Chancellor furnished the court with the following opinion, as containing the reasons for his decree.

WILLIAMSON, C. The complainants are before the court as the devisees of George Woodruff, deceased. They allege, in their bill, that George Woodruff was seized and possessed in fee simple of a valuable farm, of about one hundred and eighty acres, situated on the river Delaware, with an extensive front along that river running down to low water mark, and affording at all points an easy and convenient access to the river, which was much resorted to and used by George Woodruff and his family, and by persons occupying the farm under him, for the purpose of bathing, boating, fishing, watering cattle and procuring ice in winter, and for other purposes of business and plea· sure ; and that the value of the farm, both as a desirable residence and for the purposes of cultivation, was much enhanced by its situation upon the river, and the ease and convenience with which the advantages thereof could be used and enjoyed ; that the Trenton Delaware Falls Company was incorporated by the legislature of this state, with power and authority to cut a raceway for the purpose of creating a water power from the head of Wells·

falls, in the Delaware river, in and along and near the banks of said river, to a point below the city of Trenton; that the company located their main raceway across that part of the farm of the said George Woodruff which lay next the river, so that it was necessary for the company to have a portion of the farm upon which to construct their work; that in pursuance of an agreement made between the said George Woodruff and the company, the said Woodruff and wife, on the twenty-sixth of January, 1832, did, in and by a certain deed of conveyance made between the said George Woodruff and his wife, of the first part, and the said the Trenton Delaware Falls Company, of the second part, in consideration of the sum of three hundred dollars to them, the said grantors, paid, and of the covenants and agreements in said deed contained, grant and convey unto the said company, their successors and assigns, in fee simple, the following described portion of said farm, being all that part thereof which lay adjoining and next to the river Delaware, to wit: beginning at low water mark of the river Delaware, &c., containing two acres and sixty-three hundredths of an acre, subject nevertheless to the following proviso and covenants, contained in said deed and therein set forth, as follows, to wit: "subject nevertheless to the following proviso, that if the said main raceway shall not be made on said premises in conformity to the act incorporating said company, the said lands and premises shall revert to the said George Woodruff, his heirs and assigns. And also, that the said party of the second part shall erect, maintain, and keep in good repair a safe, convenient, and substantial bridge across said main raceway, at a place to be designated by the said George Woodruff; and also cause to be made and kept in order a convenient landing place on the side next the river Delaware, so that wagons may at all times safely pass over thereon, and shall also erect and maintain all necessary fences across the said main raceway, together with fences across the said premises.

and shall also permit the said party of the first part to use the said raceway to give drink to his cattle, and also to take ice therefrom to fill his ice-house."

The bill alleges that the grantees cut the main raceway, and that it has been, and is now used as such, and that it came into the possession of the defendants, as assignees of the grantees, by virtue of several acts of the legislature of the state; that by reason of the contracts and covenants contained in the deed aforesaid, the grantees therein named were bound to erect, maintain, and keep in good repair a safe, convenient, and substantial bridge across said main raceway, and a landing place, and to erect and maintain the fences, and that the defendants, as holding under them, are bound to perform their covenants and agreements; that although frequently applied to by the said Woodruff, in his lifetime, and by these complainants since his decease, both the said grantees and these defendants have always refused to perform their said covenants and agreements. The bill prays for a specific performance, and also compensation for the injury sustained by reason of the failure to perform and keep the covenants in time past.

The defendants answered the bill, and some evidence has been taken on both sides; but the case, as I have stated it from the bill, presents the points upon which I shall decide the case.

If the matters mentioned in the proviso of the deed could be legally regarded as covenants, and as such be enforced at law, I should have no difficulty in declaring them to be covenants relating to the *realty* and running with the land, and that both the liability to perform them and the right to take advantage of them, passed to the *assignee* of the land and of the reversion. It appears to me that such a construction would not conflict with the principles established. I use the word *established* because those principles have ruled and regulated all subsequent authorities *in Spencer's case.* 5 *Coke's Rep.* 17.

It is argued that the word *assigns*, being omitted in reference to the things to be performed by the grantees, and the things to be done not being in *esse* and parcel of the premises, the defendants, as the *assignees* of the Trenton Delaware Falls Company, are not bound; that it is directly within *Spencer's case*, and of the first resolution, as there laid down.

And it also insisted that, by the principle laid down in the *second resolution* in *Spencer's case*, the defendants are not bound, because the thing to be done is collateral to the land.

It was resolved (*by the second resolution*), that in this case (*Spencer's case*) if the lessee had covenanted for him and his assigns, that they would make a new wall upon some part of the thing demised, that forasmuch as it is to be done upon the land demised, that it should bind the assignee; for although the covenant doth extend to a thing to be newly made, yet it is to be made upon the thing demised, and the assignee is to take the benefit of it, and therefore shall bind the assignee by express words. But although the covenant be for him and his assigns, yet if the thing to be done be merely collateral to the land, and doth not touch or concern the thing demised in any sort, there the assignee shall not be charged. As if the lessee covenants for him and his assigns to build a house upon the land of the lessor which is no parcel of the demise, or to pay any collateral sum to the lessor or to a stranger, it shall not bind the assignee, because it is merely collateral, and in no manner touches or concerns the thing that was demised or that is assigned over; and therefore in such case the *assignee* of the thing demised cannot be charged with it no more than any other stranger.

In the present case there was nothing to be done *collateral* to the land conveyed. The grantor reserved to himself a right of way on the main raceway, and also a convenient landing place at the river. This right of way, as well as landing place, was an interest in the thing

granted, and would pass as *appurtenant* to the grantor's farm. The thing to be done upon the land was the *medium* which created the privity of estate between the grantor and the grantee. It was an incident to the land conveyed, enuring to the benefit of the grantor as the owner in fee of the adjacent soil. It is not like a mere personal covenant which does not affect or concern the premises conveyed, as to build a house or wall upon the land of the grantor, which is not parcel of the thing granted, or merely to pay a sum of money to the grantor or to a stranger.

In *Bally* v. *Wells* (*Wilmot's opinion*, 341, 3 *Wils.* 25), Lord Chief Justice Wilmot says, "the reason why the assignees, though named, are not bound, is because the thing covenanted to be done has not *the least reference* to the thing demised. It is a substantive independent agreement, not *quodam modo* but *nullo modo*, annexed or appurtenant to the thing leased." But although this is a covenant running with the land, yet, according to the first resolution in *Spencer's case*, it does not bind the assignee not expressly named, if the covenant does not extend to a thing in *esse* at the time of the covenant. The principle is well settled; the only question is as to its application. It does not extend to *repairs*. In *Cockson* v. *Cook* (*Cro. Jac.* 125), it was decided that covenant lies against the assignee on a covenant not to plough, although assignees are not named in the deed, for it runs with the land, but not on a collateral act, as to build *de novo*. And in the *Dean and Chapter of Windsor's case* (5 *R.* 24), it was resolved that the assignee is bound to repair, though not mentioned in the lease. To apply the principle properly, it is necessary that we should look at the character of the thing covenanted to be done; its connection with the land; the mode of its enjoyment; and for whose benefit it is intended. At the time of the conveyance of this land, it constituted the grantor's mode of access to the river, and also a landing place, both of which conveni-

places were necessary to the grantor's beneficial enjoyment of his property. That way and landing place were to be kept good by the grantees. (I am assuming that the stipulation named in the *proviso* constituted covenants on the part of the grantee.) By digging the raceway, the grantees destroyed the grantor's access to the river. The reconstruction of the way and landing place was not like doing a thing *de novo*, but a *reparation* of that which had been destroyed. The particular manner in which the way was to be reconstructed does not alter its legal character in this respect. A. covenants in a lease to repair; the building is destroyed by fire; the covenant can be fulfilled only by erecting a new building. Suppose there had been a covenant in this deed by which the grantor was always to have access to the river by a right of way over the land in as convenient a manner as it existed at the time of the grant, there cannot be a doubt but that the assignee of the grantor would have been entitled to the benefit of the covenant, although not named in it. Is the covenant impaired or limited in its extent because it specified that this right of way shall be in the shape of a *bridge* to be erected by the covenantor?

But it is unnecessary to pursue this investigation any further. There is another point in the case of less difficulty, which, I think, must determine the rights of the parties in this court. There are no covenants contained in this deed on the part of the grantees. They did not sign the deed. It is true this is not necessary always. The acceptance of the conveyance and the land granted will in some cases bind the grantees to the performance of the covenants; but it cannot bind them to covenants which do not exist. I have already recited all that part of the deed in which it is *said* the covenant exists. There is a *proviso* by which it is declared, that unless the grantees perform certain things specifically stipulated, the said lands and premises shall revert to the said George Woodruff. A *condition* is quite distinct from a *covenant*. The language

in this deed is appropriate to create a condition, and, as if to avoid any doubt, the legal consequences of a breach or violation of the condition is inserted. Upon covenants, the legal responsibility of their nonfulfilment is, that the party violating them must respond in damages. The consequence of the nonfulfilment of a condition is a forfeiture of the estate. The grantor may re-enter at his will, and possess himself of his former estate. The grantees were to make the raceway in conformity to their act of incorporation; they were to erect, maintain, and keep in good repair a safe and substantial bridge over the raceway; they were to make a landing place on the river Delaware, and to make and maintain the fences. But they entered into no covenants to do these things. They were to enjoy the land, provided they did perform these stipulations; and they accepted the deed, and entered upon the land upon the condition, that if they did not perform them, they should forfeit all the benefits of the grant. Unless these are conditions, then there exists no distinction between a condition and a covenant. *Nicoll* v. *The New York and Erie Railroad Co.*, 12 *Barb. S. C. Rep.* 460; *Coke upon Litt., by Thomas*, 4; *Com. Dig., Condition* 1, *A.* 2; *Co. Litt.* 216 *C., Hamilton* v. *Elliott*, 5 *Serg & Rawle* 375; *Platt on Cov.* 36, 37; *Bouv. Law Dict., title Proviso.*

It appears to me there can be no question as to the proper legal construction of the deed. The only question then is, can this court enforce the specific performance in a deed, the nonperformance of which works a forfeiture of the estate? This was not contended on the argument. I cannot see upon what principle the court can exercise this branch of its jurisdiction in such a case. The grantor has fixed his own remedy, and can forfeit the estate at his pleasure. There is no agreement upon which the party can maintain a suit at law for damages. I admit that this is not a criterion universally applicable. But it is one test. It has many exceptions, but this is not one of them.

If any authority can be furnished by counsel, I am willing to hear the counsel further upon the point. My impression is none can be found.

In the case of *Stuyvesant* v. *The Mayor, &c., of New York*, 11 *Paige* 414, there was a condition in the grant upon which the title of the corporation to the land depended; but there was other and additional language in the deed which the Chancellor said amounted to a covenant on the part of the corporation to perform such condition. The deed, too, was executed by the defendants under their corporate seal.

The defendant further insisted that this was not such a case as to justify the court in the exercise of its peculiar jurisdiction of decreeing a specific performance. The great delay in applying to this court for relief; the fact that George Woodruff never pointed out the place, as the deed provided, where the bridge and landing place should be made; the change of the original parties to the contract; the death of the original grantor; and the transmission of the property by the authority of the legislature to others than the original grantees; the character by which the complainants now hold, some by purchase and others by descent, these constitute serious objections to the action of this court. But I am satisfied to decide the cause upon the other ground.

The appeal was argued November term, 1855, and decided March term, 1856.

The decision of the Chancellor was affirmed by the following vote :

*For affirmance*—CHIEF JUSTICE, Judges ARROWSMITH, ELMER, HAINES, OGDEN, RISLEY, VALENTINE, CORNELISON, HUYLER, POTTS, RYERSON, VREEDENBURGH, WILLS.

*For reversal*—None.