JOSEPH H. EXTON, complainant,

*v.*

GLEN GARDNER WATER COMPANY, defendant.

————

ELMER W. SLATER et al., complainants,

*v.*

GLEN GARDNER WATER COMPANY, defendant.

[Decided June 3d, 1925.]

**Water Rights—Diversion of Water For Purposes of Sale is an Infringement of Rights of a Lower Riparian Owner, and if the Diversion is of Such a Perceptible or Sensible Amount as Not to be Excluded Under the Maxim of "De Minimis," Complainant is Entitled to Court Protection—The Unlawful Diversion of Four Gallons Per Minute, Which Amount Will Naturally Increase as Time Goes On, Held to be an Amount Not Excluded Under the Maxim, and Complainants Are Entitled to Decree.**

On final hearing.

*Messrs. William C. Gebhardt & Son,* for the complainants.

*Mr. George H. Large,* for the defendant.

BUCHANAN, V. C.

These two suits, which were tried together, are in all essential respects identical. Each complainant is the owner of a farm or tract of land through which runs, and has always run, a stream called "Spruce Run." Each has on his respective tract a mill which has been in existence for upwards

of fifty years, and each (with his predecessors in title) has used the water of the stream to run the mill and for the agricultural and domestic purposes of the farm. (The Exton mill has not been operated for several years past, but that is of no materiality.)

Each complainant seeks injunction against the defendant for diminution of the water supply in the stream.

Defendant is a water-supply company, furnishing water to some eighthy customers in the village of Glen Gardner. It obtains its water from two sources of supply, one (called the "East Reservoir" or "Barrel Spring") on the east side and one (called the "West Reservoir" or "McConnel Spring") on the west side of Barren brook, which is a tributary of Spruce run. It owns the tracts on which these springs, respectively, are located, and the land slopes from each spring toward Barren brook.

There is some conflict of testimony, but the weight of the evidence is, and I so find, that prior to the commencement of the company's operations in 1893 the waters of the west spring had flowed as a rivulet down into Barren brook (and thence, of course, to Spruce run and complainant's lands), but that prior to defendant's development of the east spring in 1916 there had never been any water course nor any stream or flow whatever therefrom into Barren brook (except, perhaps, at occasional times of heavy rains). There had never even been an actual spring there, simply a wet or marshy piece of land, the waters of which were absorbed by the earth and air before they reached Barren brook.

It is clear, therefore, that, as to the waters of this east reservoir or Barrel spring, complainants have not, nor ever had, a right to the flow thereof, and defendant water company does no wrong to complainants by using the flow in such manner as to prevent it reaching Spruce run; while, on the other hand, complainants have a right that the flow of water from the west reservoir, through the natural water course or rivulet into Barren brook and Spruce run, shall not be diverted for purposes of sale to non-riparian owners, except

in so far as defendant may have acquired rights by adverse user.

The proofs show, and, indeed, complainants admitted at the hearing, that there had been an adverse user of a portion of the west reservoir waters ever since 1893. The proofs are, perhaps, not as exact as to quantity as could be desired, but, I think, they fairly show a user of enough to supply forty customers at ninety gallons each per day, or three thousand six hundred gallons per day. At present defendant has eighty customers and uses from seven thousand to eight thousand gallons per day, which is twice the amount for which it has the right by adverse user. Defendant is a public water company, and the town which it serves is growing so that the use may be constantly expected to increase.

Defendant contends that the proofs show that no substantial damage has been caused complainants, and that, hence, no injunction should be awarded. It is true that the damage is not shown to be substantial. The testimony of the engineer, Davis (not contradicted), was that the flow from the east reservoir, assuming that none was wasted by evaporation or absorption, would amount to only one-thousandth of a horse power at complainants' mills. Computation which I have made from the figures in evidence shows the flow of the east reservoir to about fifteen thousand gallons per day, so that the wrongful diversion of some four thousand gallons per day from the west reservoir would mean only about one three-thousandths of a horse power difference to complainants' mills.

The conclusion that no injunction should be awarded, however, is not supported by the authorities. Defendant cites *Higgins* v. *Flemington Water Co., 36 N. J. Eq. 538,* and *Paterson* v. *East Jersey Water Co., 74 N. J. Eq. 49.* The *Higgins Case* does not hold as defendant contends, as is pointed out in the *Paterson Case;* and the latter case (which was unanimously affirmed on the opinion below, *77 N. J. Eq. 588*), determines just the opposite. Vice-Chancellor Emery there says (at *p. 86*), that the diversion of the water by the

defendant for purposes of sale is an infringement of the complainant's right as a lower riparian owner to the continued flow of the stream, and that, without proof of any actual or perceptible damage, so far as the establishment of the legal right is concerned, if the diversion is of such a perceptible and sensible amount as not to be excluded under the maxim "*de minimis*," complainant is entitled to resort to this court for protection.

The unlawful diversion here amounts at present to about four gallons a minute, which I take to be "such a perceptible and sensible amount as not to be excluded under the maxim '*de minimis*,'" and will, naturally, increase as time goes on.

I conclude, therefore, that complainants are entitled to decree establishing their right and for injunction against the diversion of water in excess of the amount to which defendant has obtained the adverse right. The terms of the decree, as to the form of the injunction and the time when and conditions under which it shall take effect (in view of the fact that defendant is a public water company, and the public interest is involved), may be settled on notice.