Complainants own land in Stillwater township through which runs a stream known as Paulins kill. On their lands is a grist mill operated since 1844 by complainants and their predecessors in title with water power supplied by the stream. The mill is not located directly on the kill and water is diverted therefrom by a series of five or six crude dams in the stream constructed of loosely piled rock, into a mill pond and thence to the mill through a race and afterward returned to the kill below the mill.
Defendant owns land on the same stream a short distance above complainants' mill. On its land, four hundred feet from the kill, is a pond about nine acres in extent which is spring fed and has no visible outlet. Defendant is a philanthropic organization and maintains on its land a summer camp at which, during the months of July and August it entertains seventy boys at a time for a period of two weeks, being a total of two hundred and eighty boys for the season. Among the activities carried on at the camp for the benefit of the boys are bathing, swimming and general aquatics in and on the pond. There being no current through the pond, its waters become warm and stagnant in the months the camp is open and boys who had used the pond for swimming prior to 1935 became afflicted with an eye and ear ailment which was attributed to the stagnant condition of the pond water. Just prior to the summer of 1935 defendant installed a pump on its property near the bank of the kill and on many days *Page 448 
during July and August pumped water through a four-inch pipe from the kill into the pond for the purpose of freshening the pond waters and the pond was used those months for bathing by the boys visiting the camp. The testimony for defendant is that it is not known whether any water pumped into the pond returns to the kill, even by seepage.
Complainants experienced difficulty in operating the mill prior to the summer of 1935 because of scarcity of water in the stream at periods of low water, which usually occur in the summer months, and they complain that the extraction of water from the kill by defendant's pump at dry seasons or low water materially increases the difficulty of mill operation. They contend that defendant has no right to draw water from the kill for the purpose aforesaid and they seek restraint against future use of defendant's pump.
Stated broadly, the right to the use of flowing water is an incident to ownership of lands along which a stream passes and each landowner is entitled to the reasonable use of the waters of the stream for domestic purposes, for irrigation of his fields and watering his cattle and for similar purposes; he may also divert the flow to his business uses provided he returns the water to the stream at a point above the land of lower owners. A lower owner is entitled to the natural or undiminished flow of the stream at all seasons of the year, less such evaporation and absorption as is a natural consequence of reasonable use for the aforesaid purposes (Higgins v. Flemington Water Co., 36 N.J. Eq. 538; Doremus v. Mayor, c., of Paterson, 65 N.J. Eq. 711;McCarter v. Hudson County Water Co., 70 N.J. Eq. 695; CozyLake, Inc., v. Nyoda Girls' Camp, Inc., 99 N.J. Eq. 384), and it seems to be settled that a riparian owner may not divert the waters of a stream to make merchandise of it or transport the water for the use of others, if the diversion is of such a perceptible and sensible amount as not to be excluded under the maxim de minimis non curat lex. McCarter v. Hudson CountyWater Co., supra; Paterson v. East Jersey Water Co., 74 N.J. Eq. 49; affirmed, 77 N.J. Eq. 588; Exton v. Glen Gardner WaterCo., 3 N.J. Mis. R. 613; 129 Atl. Rep. 255. *Page 449 
The defendant is not selling the water it transports from the stream but is giving it away, or granting its use daily for eight or more weeks to seventy boys who are strangers to defendant's riparian lands and who, of their own right, have no privilege to the use of the stream waters. Riparian rights can be claimed only by the owner thereof and they include the use of the waters of a stream for ordinary and reasonable bathing privileges, which extend only to the owner, his family and inmates and guests of his household. The transfer to a large number of invitees of the bathing use of transported waters, exceeds the reasonable use to which the riparian owner is entitled. Harvey Realty Co. v.Wallingford, 111 Conn. 352; 150 Atl. Rep. 60.
Defendant's engineer recommended the installation of a pump capable of delivering to its pond one hundred thousand gallons in twenty-four hours, which is approximately seventy gallons per minute, but the pump installed has a capacity at least three times the recommended requirement for, as operated fourteen days in July it delivered two hundred and five gallons per minute to the pond and one day it was operated thirteen hours when it delivered nearly one hundred and sixty thousand gallons. However, the defendant's average use of the stream water when the pond needed freshening, was one hundred and eighty-five gallons a minute for ten hours, or a total of one hundred and eleven thousand gallons and the defendant points out that since the normal flow of the stream is twenty million gallons in twenty-four hours, but one-half of one per cent. of water would be extracted any day at the average rate. Defendant does not find it necessary to operate its pump when much rain falls, because there is then sufficient fresh water in its pond. At such periods there is also sufficient water in the kill to run complainant's mill, but it is during dry periods which usually occur in the summer months, that the stream and pond are at their lowest and it is then that complainants and defendant both require the waters of the stream for their respective purposes. If, during such dry periods defendant takes one hundred and sixty thousand gallons or even one hundred and *Page 450 
eleven thousand gallons from the stream and returns none of it, the natural and undiminished flow of water to which complainants are entitled at all seasons, must be affected. An hydraulic engineer, testifying for defendant, stated that the extraction of one hundred and eleven thousand gallons of water per day from the kill would result in a difference of one-sixth of a horsepower at the mill. Low water in the stream naturally reduces complainants' horsepower and if the extraction of one hundred and eleven thousand gallons results in a further reduction, the loss to complainants is material and cannot be excluded under the maximde minimis. I note that in Exton v. Glen Gardner Water Co.,supra, cited with approval by the court of errors and appeals inCozy Lake, Inc., v. Nyoda Girls' Camp, Inc., supra, this court held that a reduction of one three-thousandth of a horsepower, caused by diversion of water of a stream for sale purposes, was a perceptible and sensible amount and that such diversion should be restrained.
Defendant contends that after it has extracted its requirements from the stream, there remains ample flow at all times for the operation of complainants' mill and that because complainants' diverting dams are poorly constructed and are not kept in repair and water escapes through and over them and passes by complainants' mill pond, complainants fail to obtain the use of the full flow of the stream. I do not consider their contention a valid objection to granting the relief complainants seek. They are entitled to have the natural flow of the stream let down to them in its accustomed channel, undiminished by unreasonable use thereof by an upper riparian owner. Before defendant operated its pump, complainants were able to run their mill with so much of the flow as came to their mill pond, except in occasional periods of dry weather. Complainants are entitled to receive such flow without the use of diverting dams. Certainly they cannot be required to incur the expense of constructing solid or substantial dams in the stream to meet a condition wrongfully created by defendant. Dickinson v. Delaware, Lackawanna andWestern Railroad Co., 90 N.J. Law 158. *Page 451