# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY.

#### JUNE TERM, 1866.

---

THE KEYPORT AND MIDDLETOWN POINT STEAMBOAT COMPANY, appellants, and THE FARMERS TRANSPORTATION COMPANY, and others, respondents.*

1. A right given by the legislature to the owner of the shore on navigable water, to build a wharf in front of his land, does not, by implication, carry with it a right to have, as against the adjoining proprietors, the water-space kept open so that vessels can be moved along the sides of such wharf.

2. Nor does the fact that it is highly convenient for vessels in turning to use an open space at the side of such wharf, preclude the owner of the contiguous water-front from extending such front, by force of a legislative license, so as to interfere with such use.

3. The decisions heretofore made in this state appear to be based on the concession, that unless the land under the flow of tide water has been actually reclaimed, it belongs, as property, to the public, and as such is subject to the uncontrollable proprietorship of the state; and this doctrine appears to be sustained by the current of decisions in the United States.

---

\* CITED *in Stevens* v. *Pat. & New. R. Co.*, 5 *C. E. Gr.* 135; 5 *Vr.* 556; *Hoboken L. & I. Co.* v. *Hoboken*, 7 *Vr.* 551.

511

This was an appeal from a decision of the Chancellor, reported *ante p.* 13.

*Mr. H. S. Little* and *Mr. Browning*, for appellants.

*Mr. J. Parker* and *Mr. C. Parker*, for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

The appellants, who were the complainants in the court below, are the owners of a wharf on the south side of Raritan bay, and along the channel of the Matawan creek, where the same empties into the bay. This wharf, which has been commonly known as the Keyport dock, has existed in its present condition, with the exception of a slight enlargement on the west side, for over fifteen years. The complainants have title to a part of the shore line, in front of which this wharf is extended. This structure was originally erected by certain associates, by force of their supposed riparian rights, but on the nineteenth of February, 1851, (*Pam. Laws* 25), an act of the legislature was obtained, which declared that said associates and their successors, in the words of the act, "are hereby constituted a body corporate, by the name of the Keyport Dock Company, for the purpose of keeping, continuing, and maintaining the dock or wharf now owned by the said company, situate in the village of Keyport, township of Raritan, Monmouth county, and extending from said village into Raritan bay, and from time to time to repair or rebuild the same, and to extend or enlarge the same, when necessary for the better accommodation of boats or vessels; provided that such extension or enlargement shall not interfere with the navigation of said bay, river, or creek." This act was subsequently repealed by the act of the twenty-fourth of March, 1864, (*Pam. Laws* 467,) which also invested the complainants with this property, and with the privileges and franchises of the Keyport Dock Company.

The defendants, who are also owners of property on the

south side of Raritan bay, to the east, and contiguous to the line of the complainants, have commenced the erection of a wharf in front of this land, which, as the same has been planned, will extend to the navigable water, but will not project in front as far as the wharf of the complainants, by about thirty feet. If built as contemplated, it will come within seventy-three feet of the complainants' wharf in the front, and within about forty-five feet of it at an intermediate point nearer the shore. The defendants claim that the improvement thus commenced is authorized by an act of the legislature, passed in the year 1866, whereby the following privilege was conferred on one George J. Kibbee, his heirs and assigns, viz. " to build, maintain, and keep in repair, a dock or wharf, or to lease, for a term of years, to any person or persons, or to any incorporated company, for the purpose of building, maintaining, and keeping in repair, a dock or wharf upon and in front of his lands, in said township of Raritan, extending a sufficient distance into said Raritan bay for the accommodation of vessels navigating the same; provided the said dock or wharf shall not obstruct the navigation of the said bay; and provided that this act shall not affect the legal rights of any person whatever." It is not denied that all the franchises and rights of Mr. Kibbee proceeding from this act, have passed, by force of a formal deed of assignment executed by him, to the defendants.

The bill which was filed in the Court of Chancery, was intended to prevent, by means of an injunction, the defendants from progressing with the erection of their wharf, which they had begun by virtue of the authority, and under the circumstances, above mentioned. It will be observed that the defendants are possessed of the title to the land along the shore in front of which they have commenced to make the improvement in contemplation, and that they are also acting under color of legislative authority; this being their admitted status, the burthen then is thrown upon the complainants, to show that they are about to transcend the privileges thus derived to them, and that such abuse injuriously affects, in

a material degree, their own rights.    The legislative grant to the defendants, and the limitations of such grant, are clear and definite; the privilege given is to erect and maintain a wharf in front of their land, the restrictions of that privilege being that such erection shall not obstruct navigation, and shall not injuriously affect the legal right of any other person.

It cannot be reasonably pretended that the construction of the defendants' wharf, in the manner now designed, will be an impediment to general navigation, within the meaning of the prohibitory clause of their charter.    The wharf is not to be pushed into the bay beyond the line where it will first reach the navigable water, and it was to accomplish that end that their special privileges were conferred upon them.    It is entirely clear, therefore, that there exists no reason whatever to impute to the defendants any attempt, in this particular, to abuse the authority which they have derived from the state, and under which they assume to act.    This consideration narrows the inquiry, and limits it to the single point, whether the defendants, in doing the act in question, will invade the legal rights of the complainants.    We are thus led to examine what those rights are which the complainants claim, and which, they allege, will be thus essentially injured.

In their bill, the complainants have specified two grounds of complaint:    First, that in consequence of the propinquity of the contemplated structure of the defendants, they will be hindered from receiving vessels along the east side of their wharf; and, in the second place, that they will be deprived, from the same cause, of the privilege heretofore enjoyed by them of turning their own boats partly in this same space. The case made in the pleadings and in the affidavits, shows that the steamboats now used by the complainants are two hundred and twelve feet in length, and fifty-three feet beam; that the channel in front of their wharf, at low tide, is not of sufficient width to admit of their turning their boats; and that their practice has heretofore been, in returning from New York, to run the bows of their boats a considerable distance along the east side of their wharf, where, by throw-

ing out a line, they can back and round the boats to the front of their wharf in position to discharge their passengers and freight, and in readiness to start on their next trip. It is clearly manifest, from the proofs, that these boats, on their return trips, can run directly to the face of the wharf without any noticeable hindrance; but it is insisted, that if they do this they must wait, with their steam kept up at an expense, for a change of tide, before they can turn their head in the direction of their next trip. The point for solution is, are these privileges, which it is clear have, to some extent at least, been enjoyed, to be considered as legal rights vested in the complainants.

My consideration of the case has led me to the conclusion that the complainants have presented no substantial grounds on which to support the claims thus made. A capacity to receive at their sides, vessels, to load and unload, cannot properly be said to appertain as of right to these statutory wharves. Such an incident will not arise by implication; and the grant of the franchise to construct and maintain a wharf, does not embrace it. In fact, these erections are designed to go merely to the line of navigable water; if they extend beyond this, they, of necessity, become to some extent, obstacles to navigation, a result which is, in general, specially prohibited; so that in the nature of the thing itself, it is the front of the wharf, and not its sides, which affords the proper berth for vessels. It is of great practical moment that this feature should be kept in view, because, if the grant from the state of a privilege to erect a wharf carries with it, as a convenient appurtenance, the right to receive vessels at each of its sides, it follows, necessarily, that in all cases such space must be left open, and thus the extension of one water front becomes the exclusion of the exercise of a similar right by the adjacent shore owners. Indeed, if the construction of the charter of the complainants as contended for, be correct, the result must be that when one proprietor of riparian land has acquired, under the provisions of the general act of the state, the right to run out a wharf in front of his premises, he has

also acquired, as a legal concomitant of such right, the power to prevent his neighbor on each side of him from enjoying a similar privilege. I think, upon reflection, it will be conceded that such cannot be the legitimate import of these legislative grants. The fair, and as I think, the very obvious interpretation of them is, that the owner of land along the water line thereby gains the right to extend his front to the point of navigation. The general statute, just alluded to, which authorizes in an appointed mode, the building of wharves, is framed, in all its parts, on this idea; for its principle is, very clearly, to give an equal privilege to each riparian owner. Nor is it necessary, at this time, to consider the important question, whether a shore owner can, by force of legislative authority, for the benefit of a private person, be deprived of any of the natural advantages incident to the situation of his land upon tide water. It has already been conclusively settled by judicial decisions in this state, that after such land owner has reclaimed from the dominion of the water the land along his front, even beyond low water mark, his title to such portion thus reclaimed becomes vested and indefeasible, except so far as it, in common with all other property, is subject to the state's eminent domain. These decisions are based, perhaps, on the concession, that unless the land under the flow of tide water has been actually reclaimed, it belongs, as property, to the public, and as such is subject to the uncontrollable proprietorship of the state; and such, it would seem, is the doctrine sustained by the current of decisions in the United States. But not being requisite for the purposes of this case, it is not intended to intimate any opinion on this subject. It is at present, sufficient to observe that the public sentiment, from the earliest times to this day, and the whole course of legislative action in this state, have recognized a natural equity, so to speak, in the riparian owner to preserve and improve the connection of his property with the navigable water, and that the consequence is that a strong presumption arises against all implication of an intention on the part of the legislature to

Keyport Steamboat Co. *v* Farmers Transportation Co.

violate such equity. In my opinion such a design should not be deduced from the words of any statute, either general or special, except when it contains language not susceptible of any other rational interpretation. In the present instance, the charter upon which the complainants rely, is devoid of all expressions having a tendency to indicate a purpose which, in itself, is so improbable. The ability which is conferred by this charter to extend or enlarge a wharf, can be given a reasonable scope without imputing to the language used a meaning which would authorize the doing of an act which would be regarded, in public opinion, as an infringement of a right. The substantial effect of this charter, in my opinion, is to legalize the wharf as it existed at the time of the passage of the act, with a power to enlarge it in width to the extent of the shore front then owned, or which might thereafter be acquired, by the company. This part of the claim of the complainants must therefore be rejected.

As to the other insistment, of a right to an open space on the east side of their wharf, for the purpose of facilitating the turning of their boats, it seems to me that it has not, in principle, the slightest foundation on which to rest. It is true, that a grant of a right to build and maintain a wharf bears with it, by implication, the right to use it; but then such use must be in the ordinary mode. Extraordinary, unusual modes of use, no matter how convenient they may be, are not annexed as incidents in law to such grant. And it certainly cannot be denied that this mode of use of this wharf, the right to which is now asserted, is not an ordinary one. That it is a necessary one, there is no pretence. Nor is it any answer to this objection to say, that such use has become almost indispensable to the enjoyment of this wharf in its connection with the business to which it has been put. The state, in making this grant to the complainants, did not guarantee to them that they could use their structure at all stages of the water, or with boats of certain dimensions. Nor was it any part of the agreement, that if the complainants could not, at certain tides, use their wharf to advantage

in the common way, that the state would permit them, in abridgment of her rights, to resort to uncommon methods of enjoyment.   There is no evidence in the case, so far as I am aware, to show that a right to turn a vessel in the manner above described, is a right appurtenant to wharves in general; it cannot, therefore, on any known principle, be claimed to be annexed, by operation of law and without express grant, to this particular wharf in question.

Reaching this result, it becomes unnecessary to consider the other questions which were so ably discussed by counsel on the argument.

Concurring entirely in the conclusions of the Chancellor, I am of opinion that the injunction was rightly refused, and that the decree should be affirmed, with costs.

Decree affirmed by the following vote:

*For affirmance*—BEASLEY, C. J., BEDLE, CLEMENT, COR-NELISON, DALRIMPLE, ELMER, FORT, HAINES, KENNEDY, VAIL, VREDENBURGH, WALES, WOODHULL.   13.

*For reversal*—NONE.