The bill of complaint in this case was filed by Bertha Grobart who alleges that she is the owner of riparian lands situated below the Great Falls on the Passaic River. It seeks to enjoin the defendant, North Jersey District Water Supply Commission, from diverting waters from the Wanaque River, a tributary of the Passaic River. The point of diversion is the location of the works of the defendant in Wanaque at a point approximately ten miles above the complainant's premises. The complainant asks this injunction unless the defendant shall cause her rights to be condemned at law and damages fixed in such condemnation proceedings. The bill also asserts a claim for money damages, which claim, however, was abandoned by the complainant at the hearing.
The bill alleges that complainant "is vested with a dower right, and the oral conveyance to her by her children by which they transferred all their interest to her, which transfer was made shortly after the death of her husband, Bernard Grobart, giving complainant an absolute title in fee." Defendant's answer to this allegation is: "The defendant has no knowledge or information sufficient to form a belief as to the statements in paragraph 1 and puts complainant to her proof of title and says that said alleged oral conveyance to complainant is void and in violation of the statute of frauds in such case made and provided."
At the hearing, complainant attempted to prove the title as alleged in the bill by testimony of her son, Samuel Grobart. The following questions and answers relating to the proof are as follows:
"Q. Mr. Grobart, you are one of the sons of Bernard Grobart, deceased? A. Yes, sir.
"Q. When did Bernard Grobart die? A. My father died on March 24th, 1921. *Page 62 
 "Q. Whom did he leave surviving as heirs-at-law? A. My mother, Bertha Grobart.
"Q. That is his widow? A. That is the widow. Geta Titelbaum, a sister, Louis, Rose, Meyer and Samuel, as children. The other children, I should say.
"Q. Are they all living? A. They are.
"Q. At the present time? A. Yes."
Complainant offered in evidence a certified copy of a deed dated July 14th, 1918, whereby Addy Venable Co. conveyed the premises, allegedly affected by defendant's diversions, to Bernard Grobart, the husband of complainant.
The witness, Samuel Grobart, then testified as follows:
"Q. Did you later, with your brother, sue Louis Grobart, another brother, in the Passaic Circuit Court? A. Yes, sir.
"Q. And by reason of a judgment, did you cause execution to be levied on the interest of your brother? A. Yes.
"Q. And did you purchase the interest of your brother at a public sale? A. I did.
"Q. In pursuance thereof, did you subsequently receive this deed from the sheriff? A. Yes, sir.
"Q. This deed includes the premises described in the bill of complaint, with other lands, does it not? A. It does."
At this juncture of the case, complainant's solicitors placed in evidence a deed dated June 13th, 1933, from Frank Davenport, sheriff of the County of Passaic, to Samuel Grobart, the witness, which deed conveyed the interest of Louis Grobart in the premises allegedly owned by the complainant.
The only other evidence given by the witness relating to the title of the complainant was as follows:
"Q. Have there been any other changes in the title of that property, Mr. Grobart? A. None.
"Q. So far as conveyances are concerned. Is your mother in occupation of the premises at the present time? A. Yes.
"Q. The premises are occupied for what purpose? A. At the present time they are occupied for textiles; silks and rayon."
It is obvious from the foregoing extracts of the testimony and from the exhibits that the complainant has failed to prove the allegation of the bill that she is the owner in fee of the *Page 63 
premises. Aside from any consideration of the statute of frauds, the proof of title in fee in the complainant by means of the alleged oral conveyance from her children is non-existent.
If the complainant be given the best advantage from the proof adduced, it may demonstrate, on the assumption that her husband died intestate, that she was at the time of the filing of the bill and of the hearing, the owner of a dower right in the premises and that a portion of the fee was vested in her son, the witness above referred to, as an heir-at-law of his father and by virtue of the deed from the sheriff of Passaic County to him.
The difficulty, however, lies in the fact that the complainant has died between the time of the hearing and the filing of the briefs. Her dower right was extinguished by her death. SeePhair v. Monticello Realty Co., Inc., 131 N.J. Eq. 519, 521.
There was, therefore, upon her death, an abatement of her cause of action. See Story's Equity Pleadings (9th ed.) 321 §356, wherein the author says:
"The death of one of the parties to a suit does not, in all cases, necessarily produce such an abatement of it, as to suspend all further proceedings, but only when the interest of such party, or that which he represents, survives. If the interest of a party dying so determines, that it can no longer affect the suit, and no person becomes entitled thereupon to the same interest (which happens in the case of a tenant for life, or a person having a temporary or contingent interest, or an interest defensible upon a contingency), the suit does not so abate, as to require any proceeding to warrant the prosecution of the suit against the remaining parties. But, if the party so dying be the only plaintiff, or the only defendant, there will necessarily be an end of the suit, if there is no subject of litigation remaining."
See, also, Mitford's Equity Pleadings by Jeremy, *58, and 1C.J., Abatement and Revival 155 § 253, wherein it is said:
"But where the sole party to a suit dies, and his interest does not survive to another, the abatement caused by his death will necessarily end the whole suit."
Assuming that the failure of proof with respect to complainant's title was the result of inadvertence and that adequate *Page 64 
proofs can be supplied (for which purpose I will reopen the hearing, upon a proper application), I will consider the case upon the merits.
The bill alleges that since the defendant commenced its diversions, it has diverted an average of 45.872 millions of gallons of water daily from the Wanaque River where the defendant's works are located. The maximum daily diversion alleged is 63.879 millions of gallons of water daily.
Defendant concedes that it has diverted water in the quantity above mentioned. The defense is twofold. First, that the complainant's property is not entitled to the benefit of the full and natural flow of the Passaic River but only to such flow as remains after certain authorized diversions are made. Second, that the defendant, by authority, is exercising a substitutionary right to make such diversions. This authority is found in its grants from the State of New Jersey (Exhibits D-4 and D-5), by deed from the Morris Canal and Banking Company, acting in the name of and as trustee for the State of New Jersey, and by a conveyance from the Passaic Valley Water Commission. (SeeExhibits D-18 and D-21.)
I have reached the conclusion that by virtue of the deed from the Morris Canal and Banking Company, acting in the name of and as trustee for the State of New Jersey (R.S. 13:12-3), this defendant obtained the right to divert 77 cubic feet of water per second or approximately 50 millions of gallons of water per day. The Morris Canal and Banking Company's right to use that amount of water in order to maintain its canal was settled by this court in Lehigh Valley Railroad Co. v. North Jersey, c.,Commission, 94 N.J. Eq. 94. Complainant, however, contends that said deed did not convey the water rights of the grantor for the reason that the deed is silent with reference to such rights. I believe this contention is without merit because a contrary construction of such conveyance is required by R.S. 46:3-16.
In addition, the proofs further established that on January 17th, 1933, the Passaic Valley Water Commission transferred to the defendant the grantor's easement and right to divert the flow of the Wanaque River and Post Brook (a tributary of the Wanaque River) and the tributaries thereof. This *Page 65 
was tantamount to the right to divert 22.6 millions of gallons of water per day because, by a final decree of this court, it had been determined that the Passaic Valley Water Commission had a prescriptive right to divert that quantity of water from the Passaic River at Little Falls at a point above complainant's lands. See Grobart v. Passaic Valley Water Commission,134 N.J. Eq. 413; affirmed, 135 N.J. Eq. 38.
The foregoing evidences a right in the defendant to divert a total of 72.6 millions of gallons of water daily. This total is in excess of 63.8 millions of gallons of water as alleged in the bill of complaint and admitted in the answer.
On behalf of the complainant, it is contended that the defendant may not justify the diversion complained of because the present point of diversion is different from the former diversion points of the Morris Canal and Banking Company and the Passaic Valley Water Commission. It is asserted that the easements acquired by the defendant's predecessors are appurtenant to the land and are not in gross. Our Court of Errors and Appeals, however, has ruled that the point of diversion and use can be changed where it results in no prejudice to the lower riparian owner. In Carlisle v. Cooper, 21 N.J. Eq. 576, the court said (at p. 594):
"That the degree of flowage upon the lands of another fixes the extent of the right, is shown by a variety of cases. The owner of the easement is not bound to use the water in the same manner, or to apply it to the same mill. He may make alterations or improvements at his pleasure, provided no prejudice thereby arises to the owner of the servient tenement, in the increase of the burden upon his land. Luttrell's Case, 4 Rep. 87; Sanders
v. Norman, 1 B. Ald. 258. So it is not necessary that the dam should have been maintained for the whole period upon the same spot, if the extent of flowage is at all times the same. Davis
v. Brigham, 29 Maine 391; Stankpole v. Curtis, 32 Maine 383.
A change in the mode of use or the purpose for which it is used, or an increase in capacity of the machinery which is propelled by the water, will not affect the right, if the quantity used is not increased, and the change is not to be prejudice of others.Angell on Watercourses, §§ 228, 229, 230; Hale v. Oldroyd,14 M. *Page 66 W. 789; Baxensale v. McMurray, L.R. 2 Ch. App. 790; Casler v.Shipman, 35 N.Y. 533; Whittier v. Cocheco Manufacturing Co., 9New Hamp. R. 455; Washb. on Easem. 279 § 38; Hulme v. Shreve,3 Green's Ch. 116."
In Johnston v. Hyde, 33 N.J. Eq. 632, 641, the court said:
"Ever since Luttrell's case it has been considered settled law that, when the easement is of a certain quantity of water, the owner is not bound to use it in a particular manner, though the purpose for which it is used be mentioned in the grant. He may use the water in a different manner or at a different place, or increase the capacity of the machinery which is propelled by it, without affecting his right, provided the quantity used is not increased and the change does not prejudice the rights of others."
See, also, Angell on Watercourses (7th ed.) 393 § 228;67 C.J., Waters, 804 § 170.
The evidence of the defendant that the flow of water past the complainant's premises would not be affected if the same diversion as to the quantity of water were made at a different point above the complainant's land was uncontradicted as appeared by the testimony of Mr. Arthur H. Pratt and C.H. Capen. I, therefore, deem it immaterial that the point of diversion was changed. A riparian owner has no property right in the water. That right is only in the flow. See Newark v. Chestnut HillLand Co., 77 N.J. Eq. 23, 28.
The fact that the Morris Canal and Banking Company did not use the water which it diverted for potable purposes does not delimit or define the right of the defendant. The extent of such right is determined by the amount or quantity used and not by the purpose for which it is used. See Carlisle v. Cooper, supra; Johnston
v. Hyde, supra; Jessop v. Passaic Valley Water Commission,117 N.J. Eq. 29, 35.
For the reasons above stated, I have concluded that no injunction should issue. *Page 67