875 A.2d 991 (2005)
378 N.J. Super. 298
Joseph PANETTA, Plaintiff-Respondent,
v.
EQUITY ONE, INC., Defendant.
Ann Covey, Plaintiff-Appellant,
v.
Equity One, Inc., Defendant-Respondent, and
Joseph D. Corvaia and Howard Smith, Defendants.
Dennis McKenna and Dorothy McKenna, Plaintiffs,
v.
Equity One, Inc., Defendant.
Diane Johnson, t/a Johnson & Johnson Realty, Intervenor-Third Party Plaintiff,
v.
Equity One, Inc., Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 2005.
Decided June 15, 2005.
*992 Michael S. Morris and Anne Covey, pro se, argued the cause for appellant (Covey & Associates, P.C., attorneys; George Dougherty and Ms. Covey, on the brief).
Michael J. Milstead argued the cause for respondent Equity One, Inc. (Milstead & Associates, attorneys; Mr. Milstead, of counsel and on the brief).
Christopher J. LaMonica argued the cause for respondent Joseph Panetta.
Before Judges FALL, PAYNE and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, the parties dispute whether a deed conveying real property  that specifically mentioned upland property but made no mention of a related riparian grant  should be interpreted to include the riparian grant. After considering the evidence, the trial judge found that the grantors did not actually intend to convey the riparian grant and, thus, concluded that the conveyance included only the upland property. We reverse because N.J.S.A. 46:3-16 mandates that deeds be construed to include all appurtenant property rights, such as this riparian grant, unless expressly excluded.

I
Rowena Schoener Francis, her son George Francis, and George's wife, Carolyn Francis, were the owners of property located at 633 Point Avenue, Brick Township. According to the findings of the Chancery judge, this property had been owned by members of the Francis family "for several generations."[1] The property consisted of an upland lot (designated on the tax map as Block 934, Lot 23.01) and a riparian grant (separately designated on the tax map as Block 934, Lot 23.03).
George Francis operated a business that, in or about 1995, required an infusion of capital to remain viable. A loan was sought from Equity One. Only 633 Point Avenue was available as security for the loan. In order to simplify the transaction with Equity One and to avoid entangling his mother in his apparently precarious business and financial affairs, George Francis arranged to have his mother transfer her interest in 633 Point Avenue to him and his wife. During this process, *993 Equity One had the property appraised and, as a result, agreed to lend $220,000.
George Francis claimed that he prepared a deed based upon the description given by Equity One. The deed's property description did not expressly include the riparian grant or refer to its separate description on the tax map as Lot 23.03; instead the 1995 deed's description referred only to Lot 23.01:
The property consists of the land and all the buildings and structures on the land in the Township [of] Brick, County of Ocean, State of New Jersey known and designated as Lot 23.01 Block 934 on the tax assessment map of the Township of Brick.
The deed also described the property by the metes and bounds of only the upland property, but also more broadly described the property as that which is "COMMONLY KNOWN AS 633 Point Avenue," thus suggesting the inclusion of the appended riparian grant. Mrs. Francis readily executed this deed at her son's request. With the execution of a mortgage by George and Carolyn Francis on the property referred to in the 1995 deed, Equity One made the loan.
In ascertaining the parties' intentions, the Chancery judge made the following observations in his findings of fact:
To be fair, [George] Francis would have encumbered the riparian interest if asked to do so, but since Equity One did not ask for it, he did not give it.... Equity One did not ask to encumber the riparian grant and [George] Francis, knowingly, did not encumber it. This court concludes as fact that there was no intention on the part of [George] Francis to encumber the riparian grant. He did not care either way, and if Equity One wanted it he would have given it to them. But because Equity One did not ask for it he had no intention of encumbering it. Equity One also had no intention of encumbering the riparian grant. Equity One was not even aware of the existence of the riparian grant. If they had been aware of it, they would have included it in the mortgage and [George] Francis would have given them a mortgage. There simply was no meeting of the minds with regard to the encumbering of the riparian grant.
This court concludes that [George] Francis only intended to get from his mother that which was necessary to obtain mortgage proceeds and to protect his mother from liability. Equity One provided him with a description of what they wanted to encumber in order to give [him] the loan. That was all [George] Francis wanted from his mother. He knowingly prepared the deed to reflect what the bank had requested. [Mrs.] Francis intended to give her son what he needed to save his business. It is doubtful that she even read the deed. It is just as doubtful that she was even consciously aware of the separate existence of the riparian grant.
In short, the Chancery judge determined that of all the parties to this transaction  George Francis, his wife, his mother, and Equity One  no one was aware that the riparian grant had a separate existence on the municipality's tax map except George Francis, and he did not disclose this fact to Equity One. As a result, the description of the property in the mortgage obtained by Equity One as security for its loan to George Francis neither expressly included a reference to Lot 23.03 nor contained a description of the riparian grant. If the mortgage encompassed the riparian grant, it did so only in a general way.[2] By the *994 same token, and of critical importance, the mortgage did not specifically exclude the riparian grant.
When George Francis defaulted on the loan, Equity One foreclosed and a sheriff's sale occurred on June 24, 1997. Equity One was the successful bidder and, while the sheriff's deed is not included in the record on appeal, we assume that it contains a description of the property identical to that contained in Equity One's mortgage and the 1995 deed conveying the property to George and Carolyn Francis. Thus, through this process, Equity One became the holder of legal title to that which was transferred to George and Carolyn Francis by way of the 1995 deed.
At the same time, Equity One received offers to purchase the property from the plaintiffs. The Chancery judge observed in his factual findings that plaintiff Joseph Panetta had written to Equity One on June 25, 1997, offering to purchase the property for $220,000; that plaintiffs Dennis and Dorothy McKenna offered on July 23, 1997 to purchase the property for $265,000; and that plaintiff Anne Covey had offered, also on July 23, 1997, to purchase the property for $240,000.
Equity One decided to reject these offers and commence a bidding process that involved only the plaintiffs. On July 25, 1997, Equity One wrote to plaintiffs, advising that it was rejecting all prior offers and, as "the owner of 633 Point Avenue," was offering to sell the property to the highest bidder pursuant to the indicated terms.
Panetta submitted a bid of $225,000 and expressed no conditions or other terms. McKenna submitted a $287,000 bid in the form of a written contract, which provided that a certain portion of the purchase price was to be applied by Equity One toward a realtor's commission, leaving a "Net to Seller" of $269,780; McKenna's contract/bid also contained a description of the property that included both the upland portion and the riparian grant. Covey submitted a bid of $280,000, which included a statement that "[s]aid property according to the deed recorded in Ocean county lists a riparian grant which is incorporated in this bid as sale of both the property and the riparian grant."
On July 29, 1997, Equity One informed Covey that her $280,000 bid was the highest. As requested, Covey forwarded a 10% deposit and a proposed contract that described the property as including the riparian grant.
On July 30, 1997, after reviewing the listing agreement mentioned in the McKenna bid, Equity One's attorney believed a mistake had been made. He advised plaintiffs that the bidding would be reopened on a competitive instead of a sealed bid basis. Before that process could be commenced, however, Covey filed a complaint in the Chancery Division asserting that she had entered into a valid and enforceable contract with Equity One,[3] and seeking the remedy of specific performance. Panetta and the McKennas soon filed their own suits.[4] Johnson & *995 Johnson Realty, the realtor referred to in the McKenna bid, successfully moved to intervene and asserted a claim against Equity One. These complaints were consolidated by the Chancery judge.
When the matter came before the Chancery judge for trial, the parties agreed to waive their right to call witnesses and consented to a decision based upon stipulated facts, the deposition testimony provided, documents admitted in evidence, and the parties' legal arguments. The parties agreed that the issues to be decided included (1) whether the pre-bidding exchange of communications between Panetta and Equity One's attorney generated a valid and enforceable contract, (2) whether Equity One's July 25, 1997 bid process letter represented an offer such that the highest conforming bid constituted an acceptance of that offer, and (3) whether any enforceable agreement resulted from the communications between Covey and Equity One after Covey was advised that she had made the highest bid.
In his decision of March 12, 2001, the Chancery judge determined that the oral discussions between Panetta and Equity One's attorney did not culminate in an enforceable contract. In so holding, the Chancery judge recognized that the Statute of Frauds no longer renders all oral real estate contracts voidable. See N.J.S.A. 25:1-13(b). However, because the parties contemplated a formal written contract before being bound, the judge (citing Prant v. Sterling, 332 N.J.Super. 369, 753 A.2d 758 (Ch.Div.1999), aff'd o.b., 332 N.J.Super. 292, 753 A.2d 715 (App.Div.2000)) correctly held that the parties' oral negotiations, in these circumstances, could not form an enforceable contract. See Morton v. 4 Orchard Land Trust, 180 N.J. 118, 129, 849 A.2d 164 (2004). The Chancery judge also held that a particular writing did not obligate Equity One to convey to Panetta because it was not signed by Equity One but by its attorney, who signed only as the document's draftsman.
The Chancery judge next determined that the letter sent by Equity One's attorney to the plaintiffs on July 25, 1997 constituted an offer that would ripen into a binding contract with the party that timely forwarded the highest conforming bid:
Given the language of the letter itself, given the circumstances under which it was drafted and received, it seems clear that the letter would cause a reasonable person in plaintiff's position to believe that he has the power to create a contract through submission of the highest conforming bid. Even more it is clear... that it was the intent of Equity One to convey the property to the highest bidder and that Equity One was making a commitment to sell the property to the highest bidder. Finally, the letter clearly satisfies the statute of fraud['s requirement of] a writing, and, as discussed above, clearly demonstrates an intent to be bound by the bidding process. In this circumstance the [c]ourt finds that [Equity One's attorney] was given the authority to execute the bid letter on behalf of and to bind Equity One.
In considering the sufficiency of the bids submitted by each of the parties, the Chancery judge held that the McKenna bid was non-conforming because it included a term that purported to require Equity One "to pay [McKenna's realtor] a commission for services rendered," which was inconsistent with the condition imposed by Equity One's July 27, 1997 letter that "no realtor commissions will be paid by the seller." In addition, the McKenna bid indicated that the property included the riparian *996 grant. Since the judge viewed Equity One's letter requesting bids to refer only to "633 Point Avenue," which the judge interpreted to include only the upland property (Lot 23.01) and not the riparian grant (Lot 23.03), he determined that the McKenna bid was non-conforming because it did not mirror Equity One's offer. The Chancery judge similarly determined that Covey's bid was non-conforming because she, too, had referred to the property to be sold as including the riparian grant. As a result of these disqualifying aspects of the McKenna and Covey bids, the judge found that only Panetta had submitted a conforming bid.
Lastly, the judge determined that the later oral statement by Equity One's attorney that Covey had submitted the highest bid could not create a binding contract because that communication contemplated a formal contract that, while prepared, was never executed.
In light of these findings, the Chancery judge concluded that, by submitting the highest conforming bid, Panetta had entered into a valid and enforceable contract with Equity One for the purchase of Lot 23.01 (the upland property). As can be seen, the judge was of the belief that Lot 23.03 (the riparian grant) was not included within the property that Equity One either owned or was attempting to sell through this bid process (or else he would have viewed either the McKenna or Covey bid as conforming and Panetta's bid as non-conforming). As a result, the Chancery judge entered an order on April 5, 2001 that "deconsolidated" the three lawsuits and rendered final judgment in favor of Panetta, for specific performance, in Panetta's suit.
After Covey appealed the April 5, 2001 order, the Chancery judge wrote to the parties on June 18, 2001 to discuss the status of the remaining claims. He observed that the two other actions  "deconsolidated" as a result of the April 5, 2001 order  were "dependent upon the conclusions reached" in Panetta's action that was then the subject of Covey's appeal. Consequently, the judge determined that it would be a waste of judicial resources and would result in an unnecessary expenditure of the parties' and the court's further time and energy to take any further action until Covey's appeal was resolved. The Chancery judge also observed that it was quite likely that the appeal was interlocutory.
Along with these comments, the Chancery judge noted in the same letter that Friedman v. Monaco and Brown Corp., 258 N.J.Super. 539, 610 A.2d 885 (App.Div.1992), a case that had not previously been cited by the parties, had come to his attention and, in his view, suggested that the premise that Equity One only owned Lot 23.01 may have been erroneous. Since the appeal was still pending, however, the Chancery judge correctly concluded there was nothing further he could do absent further direction from this court. See R. 2:9-1.
In our unpublished decision of June 20, 2002,[5] we reviewed the procedural history of these matters. We also observed that the parties had disputed at oral argument in this court whether Equity One possessed the riparian grant as the upland owner or whether some other party owned the riparian grant. Because a decision on that issue had not previously been made by the Chancery judge and because that decision could affect rights that may have been possessed by other persons who were not parties to the case  namely, George Francis, Carolyn Francis and Rowina *997 Schoener Francis  we remanded "for a plenary hearing for the trial court to determine the ownership of the riparian grant" (Slip Opinion at 7).
After our decision, steps were taken in the trial court to join George Francis, Carolyn Francis, and Rowina Schoener Francis. After their joinder, and after a sufficient period of discovery, the parties again waived the right to call witnesses and consented to a decision based upon the Chancery judge's consideration of the earlier factual record and additional documents and deposition testimony. The Chancery judge found, in his written decision of June 11, 2004, that it was doubtful that Rowina Schoener Francis, who transferred her interest in 633 Point Avenue to George and Carolyn Francis, was "consciously aware" of the riparian grant or its separate existence on the municipality's tax map when she made the conveyance, and it was also doubtful that Equity One was aware of the riparian grant. The judge concluded that if Equity One were aware of it, it undoubtedly would have required that the riparian grant be subsumed within the mortgage executed by George and Carolyn Francis and, if Equity One had so insisted, that Rowina Schoener Francis would have transferred her interest in the riparian grant to George and Carolyn Francis, who would have permitted this riparian grant to be encumbered by the mortgage. The judge also concluded that George Francis was aware of the riparian grant and, since Equity One did not ask that it be included, he did not volunteer to include it.
Based on these factual determinations, the Chancery judge concluded that the intention of Rowina Schoener Francis was to convey to George and Carolyn Francis only what was needed to obtain the loan; that these actual intentions were relevant, because the judge believed we had so held in our June 20, 2002 opinion; and even if we had not already resolved this issue in our opinion, that N.J.S.A. 46:3-16 did not require a construction of the deed that would include the riparian grant. Accordingly, the judge again concluded that only Panetta had submitted a conforming bid and that a valid and enforceable contract between Panetta and Equity had been created. An order was entered on June 28, 2004 that again awarded specific performance to Panetta. At the same time, the Chancery judge dismissed Covey's fraud claim against Equity One. And the judge lastly noted in his June 11, 2004 written decision that "[a]ll other issues and claims have either been the subject of an order or have been rescheduled by the parties."
Covey then filed the appeal at hand. Because the Chancery judge's comment in his written decision that all other issues and claims had either been disposed of or "rescheduled," we would ordinarily inquire whether it is a final order that we have been asked to review. However, we cannot determine from the record on appeal what other pleaded claims there may be that were not then resolved but were only "rescheduled." As a result, we suspect that this appeal may not be from a final order. Regardless, because we assume that any other remaining claims are inexorably linked to the issues presented in this appeal, to the extent necessary we grant leave to appeal nunc pro tunc from the June 28, 2004 order so that closure of the overarching issues that the parties have presented may be achieved. See, e.g., Mango v. Pierce-Coombs, 370 N.J.Super. 239, 245 n. 1, 851 A.2d 62 (App.Div.2004).

II
Covey has presented the following arguments for our consideration:
I. STANDARD FOR REVIEW OF FACTUAL FINDINGS.

*998 II. TRIAL COURT ERRED IN FAILING TO CARRY OUT APPELLATE COURT'S REMAND DIRECTIVE TO DETERMINE OWNERSHIP OF THE RIPARIAN GRANT.
III. TRIAL JUDGE ERRED BY FOCUSING ON THE WRONG INSTRUMENT TO DETERMINE THE APPLICABILITY OF N.J.S.A. 46:3-16 AND INCORRECTLY HELD THAT N.J.S.A. 46:3-16 DOES NOT APPLY TO APPURTENANCES AS A MATTER OF LAW.
IV. TRIAL JUDGE ERRED, UPON FINDING THAT BORROWER HAD DETECTED MISSING RIPARIAN LANGUAGE FROM SCRIVENER'S DRAFT, BY FAILING TO CONSIDER BORROWER'S BREACH OF HIS DUTY TO DISCLOSE HIS FINDING TO LENDER AS A PART OF THE IMPLICIT COVENANT OF GOOD FAITH AND FAIR DEALING.
V. TRIAL COURT PLACED UNDUE WEIGHT ON GEORGE FRANCIS['S] TESTIMONY, FAILING TO ACCOUNT FOR HIS DIRECT PECUNIARY INTEREST IN OUTCOME.
VI. TRIAL COURT FAILED TO APPLY ESTABLISHED CONSUMER FRAUD STANDARDS TO EQUITY ONE'S SWITCH IN BIDDING PROCEDURES.
Point I does not present an argument but merely contains Covey's view as to the applicable standard of review. We also find that the arguments contained in Points IV, V, and VI are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
In examining Covey's arguments in Points II and III, we discern that she actually seeks our consideration of three contentions: (a) the Chancery judge erroneously placed upon her the burden of proving, by clear and convincing evidence, that the 1995 deed and all other subsequent instruments (such as the mortgage given to Equity One and the deed delivered by the sheriff to Equity One), should be reformed to include the riparian grant, (b) the Chancery judge misconstrued our prior decision as having determined that the scope of the deed was not governed by N.J.S.A. 46:3-16 but by the parties' actual intentions, and (c) by operation of law, N.J.S.A. 46:3-16 requires an interpretation of the deed that would encompass the riparian grant as something that was conveyed to George and Carolyn Francis, encumbered by the mortgage they gave to Equity One to secure their borrowing of $220,000, foreclosed upon by way of Equity One's lawsuit following the loan default, and deeded by the sheriff to Equity One as a result of Equity One being the highest bidder at the sheriff's sale. As explained hereafter, we find merit in all three of these contentions and reverse.
While we agree with the Chancery judge's holding that Panetta and Equity One did not form a valid contract through their pre-bid communications, and while we agree with the manner in which the Chancery judge examined the bid process, found the McKenna bid non-conforming, and rejected the argument that a valid and enforceable contract emerged from the post-bid communications between Covey and Equity One, and while, without considering more, we would agree with the Chancery judge's determination that in that context Covey had submitted the highest bid, we conclude that it does not follow, as Covey argues, that she is entitled to relief. A holding that the deed should have been construed as including the riparian grant does not inevitably require a finding that Covey had entered into a valid and binding contract with Equity One or that, if she had, she would be *999 entitled to specific performance. Instead, we conclude that it would be inequitable to allow the bid process  skewed by the parties' misunderstanding and confusion about what was being offered for sale  to support the formation of any enforceable contract. Accordingly, we will remand the matter for the dismissal of the specific performance claims asserted by Panetta, McKenna, and Covey, for the dismissal of any of their claims that they entered into enforceable contracts with Equity One, and for the entry of a declaratory judgment that Equity One is the owner of legal title to 633 Point Avenue, including both the upland property (Lot 23.01) and the riparian grant (Lot 23.03). This declaratory judgment should be in recordable form so that the public record and any future purchaser will be clear about what Equity One presently owns. Lastly, as previously mentioned, we are uncertain about which claims have not yet been adjudicated, but were instead only "rescheduled." We remand for the Chancery judge's determination as to what extent these other "rescheduled" claims may remain actionable in light of our decision.
Having summarized our holdings, we hereafter explain why we agree with Covey that the Chancery judge mistakenly (a) interpreted N.J.S.A. 46:3-16, (b) saddled Covey with the burden of persuasion, and (c) assumed that our prior unpublished decision precluded the application of N.J.S.A. 46:3-16 in the trial court's future analysis of the 1995 deed and instead required a determination as to the actual intent of the deed's grantors.

A
All deeds governed by New Jersey law must be construed in the manner declared in N.J.S.A. 46:3-16, which states:
Every deed conveying land shall, unless an exception shall be made therein, be construed to include all and singular the buildings, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances to the same belonging or in anywise appertaining; and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and of every part and parcel thereof.
In interpreting the scope and meaning of this statute, we start with its obvious intent to preclude disputes based on deed ambiguities. That is, the statute serves the larger goal of insuring that the public record will continue to provide certainty and stability in land ownership, see Fliegel v. Sheeran, 272 N.J.Super. 519, 525, 640 A.2d 852 (App.Div.), certif. denied, 137 N.J. 312, 645 A.2d 140 (1994); Palamarg Realty Co. v. Rehac, 159 N.J.Super. 287, 293, 387 A.2d 1233 (App.Div.1978), vacated on other grounds, 80 N.J. 446, 404 A.2d 21 (1979), by superimposing on all deeds  even those deeds whose terms, standing alone, may not be sufficiently clear  a consistent and discernible meaning. The statute also exhibits an intent to prevent fraud by precluding a grantor from attempting to secretly retain, through ambiguous drafting, some part of or interest in land that by all rights ought to remain part of the land conveyed. In this way, the statute lists all those things that might be considered part of a plot of land, whether tangible or intangible, and whether visible or invisible, and directs that all such things are included in a conveyance unless expressly excluded. The statute indicates all those types of things in broad and sweeping language. The statute includes all buildings and improvements, all waters and watercourses. It broadly includes all rights, liberties, privileges, hereditaments *1000 and appurtenances.[6] It also includes reversionary rights, remainder interests, and the right to all rents, issues and profits that the land has or may generate. The statute's expansive qualities serve as a caution to grantors to carefully express those property interests related to the land conveyed that they intend to exclude, or else bear the consequence that their deeds will be construed to include such appended interests.
N.J.S.A. 46:3-16, we conclude, is instinct with an intent that all property interests that may arguably be contained within or deemed appended to a parcel of real property, whether tangible or intangible, should be viewed as included within the property conveyed by a deed that does not include exceptions. While the statute has not often been discussed in the reported decisions of our courts since its enactment over 100 years ago, those few examples that are available demonstrate its all-encompassing scope. Indeed, it is noteworthy that not a single published opinion can be found that has indicated an exception to the statute's broad descriptive terms.
In holding that the riparian rights to the area of the Metedeconk River immediately adjacent to the southern border of the upland property, through an application of N.J.S.A. 46:3-16, must be deemed an appurtenance to the upland property, we find persuasive the prior decisions that demonstrate the statute's broad application to similar property interests.
In Grobart v. North Jersey Dist. Water Supply Commission, 142 N.J. Eq. 60, 58 A.2d 796 (Ch.1948), the court rejected a downstream property owner's argument that the defendant had no riparian right to the use of the Passaic River because that riparian right was not expressly included in the property deeded to defendant. The court rejected this argument in the following brief comments:
Complainant ... contends that said deed did not convey the water rights of the grantor for the reason that the deed is silent with reference to such rights. I believe this contention is without merit because a contrary construction of such conveyance is required by [N.J.S.A.] 46:3-16.
[Id. at 64, 58 A.2d 796.]
Similarly, in Stanfield v. Schneidewind, 96 N.J.L. 428, 430, 115 A. 339 (Sup.Ct.1921), the court held that a natural stream covered by an artificial brick structure that was further covered by three feet of soil, was "inseparably connected with and inherent in the land, it is parcel of the inheritance, and passes with it," citing N.J.S.A. 46:3-16. Accord Karam v. Dep't of Envtl. Prot., 308 N.J.Super. 225, 239-40, 705 A.2d 1221 (App.Div.1998) (holding that upland property and tide-flowed, riparian lands should be viewed as "a single property"), aff'd o.b., 157 N.J. 187, 723 A.2d 943, cert. denied, 528 U.S. 814, 120 S.Ct. 51, 145 L.Ed.2d 45 (1999); Friedman, supra, 258 N.J.Super. at 544, 610 A.2d 885 (title to "alluvion [i.e., land that has been added as a result of tidal action] was not severable[, but] was subject to being conveyed with title to the upland tract."); Vagnoni v. Gibbons, 251 N.J.Super. 402, 410, 598 A.2d 530 (Ch.Div.1991)[7]; In re Mendez, *1001 255 B.R. 143, 147 (Bankr.D.N.J.2000) (holding that while easements are not expressly included within the terms of N.J.S.A. 46:3-16, they are included within the "rights, liberties, [and] privileges" to the property that are also encompassed by the statute); see also 13 New Jersey Practice, Real Estate and Practice, § 11.22, at 341-42 (John A. Celentano, Jr.) (2nd ed. 2002) ("The general rule is that on a conveyance of property the law will imply a grant of all the incidents rightfully belonging to it ... which are essential to the full and perfect enjoyment of the property.... The appurtenances which pass are not limited to such as are absolutely necessary to the enjoyment of the property conveyed, but include such as are necessary to the full enjoyment thereof.") (internal quotation marks omitted); 6A Powell on Real Property ¶ 899[3g] at 81A-119 (1990) ("[It is] the generally prevailing modern principle that a deed will be construed as a conveyance of all that the grantor owns unless a clear limitation is placed thereon."); Powell, supra, ¶ 899[3i] at 81A-126 ("[The] canon [that a deed includes appurtenances even though they are not specifically mentioned] merely states the common view that a conveyance includes not only the land which is specifically conveyed, but also any interest which is symbiotically part of the land itself.").
It is also important to recognize that prior to the adoption of N.J.S.A. 46:3-16, an upland property owner's right to the use of an abutting waterway was considered an "appurtenance" to the upland property. See Woodruff v. Trenton Water Power Co., 10 N.J. Eq. 489, 505-06 (E. & A. 1856); Keyport and Middletown Point Steamboat Co. v. The Farmers Transp. Co. of Keyport, 18 N.J. Eq. 13, 23(Ch.), aff'd, 18 N.J. Eq. 511 (E. & A. 1866). Woodruff and Keyport thus persuasively demonstrate that, as a general matter, riparian rights have traditionally been considered as "appurtenances" to the land to which they are related. In seeking an accurate understanding of N.J.S.A. 46:3-16, we must therefore assume that the Legislature intended that the word "appurtenances" contained within its 1899 enactment would thereafter be interpreted to encompass riparian rights such as those considered in Woodruff and Keyport because, in interpreting statutes, we "presume that the Legislature is familiar with existing case law." Great Atl. & Pac. Tea Co., Inc. v. Bor. of Point Pleasant, 137 N.J. 136, 148, 644 A.2d 598 (1994); see also Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 350, 94 A.2d 482 (1953).
In applying this meaning of the statute to the present matter, we conclude that the mandate of N.J.S.A. 46:3-16 that "appurtenances" to land not expressly excluded are included, and that the word "appurtenances" includes riparian rights, requires a finding that the riparian rights to an area of the Metedeconk that lies adjacent to the southern border of the upland property of 633 Point Avenue  a riparian right that is symbiotically appended to the upland property and worthless without the right to access it through the upland property  is appurtenant to and a part of the upland lot. That riparian grant was conveyed to George and Carolyn Francis in 1995 and was thereafter encumbered, foreclosed upon and sold to Equity One, even though it was never expressly mentioned in the 1995 deed or any of the *1002 later instruments that caused the ultimate conveyance of the property to Equity One.
In so holding, we find no significance in the fact that the riparian grant possessed its own designation on the municipality's tax map, although we recognize that this fact distinguishes the present circumstances from nearly all the other decisions cited herein.[8] It is argued that Friedman is dispositive and that the separate designation of the upland property and the riparian grant on the municipality's tax map makes a difference. We disagree. To be clear, Friedman does not hold that the separate recognition of a riparian grant by a taxing authority is meaningful. In Friedman, we said that "riparian rights are part of the estate to which they attach and that the alluvion [i.e., land accumulated by the action of tides] is also part of the beachfront estate until such time as it is severed by subdivision or is separately recognized by the municipal taxing authority in its assessments." 258 N.J.Super. at 544, 610 A.2d 885 (emphasis added). The emphasized portion of this quote from Friedman relates to the alluvion, not the riparian rights mentioned earlier in the same sentence. In addition, to the extent that the opinion may be read more expansively, we would not find it determinative of the issues presented here. In this regard, it would suffice to say that Friedman made no mention of N.J.S.A. 46:3-16 and that the significance it attributed to a property interest's separate recognition by a municipal taxing authority constituted dictum.
We also find no significance in the fact that N.J.S.A. 46:15-1.1 states that to be recorded a deed must "include[] a reference to the lot and block number of the property conveyed as designated on the tax map of the municipality at the time of the conveyance...." This statute governs only the qualities that a deed must possess in order to be recordable. It does not state, and should not be construed as meaning, that a deed must possess these qualities in order to validly convey property or that the failure to mention a lot number by which a taxing authority identifies appurtenant property precludes the conveyance of that unmentioned property interest.
We, thus, conclude that for the 1995 deed to have excluded a transfer of the riparian grant, it was incumbent on the grantors to expressly exclude it. This could have easily been accomplished by the grantors adding to the phrasing of the property description that they were excluding from the conveyance "a riparian grant designated in the tax map of Brick as Lot 23.03, Block 934." The grantors here failed to include this or any similar statement in the deed in question. Indeed, not only did the grantors fail to express such an exclusion but, if we were to assume the riparian grant was excluded, *1003 we would also have to assume that the grantors intended to defraud Equity One because their affidavit of title contained their sworn joint statement that they "have never owned any property which is next to this property." The riparian grant refers to an interest in the use of the Metedeconk River that is "next to" the upland property in question. Either the deed conveyed the riparian grant or this statement in the affidavit of title was false.
We would further observe that permitting the Francis family to retain the riparian grant by excluding it from the scope of the deed would, in essence, have permitted them to illegally subdivide the two "parcels" contrary to N.J.S.A. 40:55D-55 and Fox v. Tp. of West Milford, 357 N.J.Super. 123, 127-28, 814 A.2d 637 (App.Div.2003)  yet another factor that militates against a narrow interpretation of the 1995 deed.
N.J.S.A. 46:3-16, therefore, compels our conclusion that the riparian rights were conveyed notwithstanding the absence of any express mention of those rights in the 1995 deed, and notwithstanding the grantors' actual intentions.

B
While not necessary to our decision, we also conclude that the Chancery judge mistakenly saddled Covey with the burden of persuading, by clear and convincing evidence, that the deed ought to be reformed to include language that would include the riparian grant. This was an inaccurate way of describing what Covey was attempting to demonstrate. As we outlined above, Covey's argument, with which we agree, was that the deed did not require reformation because, when illuminated by N.J.S.A. 46:3-16, the deed must be construed to include the riparian grant. Posing the issue that way, Covey merely was required to demonstrate that the deed did not contain language that would exclude the riparian grant and that a riparian grant was one of those types of property rights referenced by N.J.S.A. 46:3-16. This first aspect was demonstrated by the deed itself and the answer to the second aspect was supplied by a legal determination as to the scope of the statute. Thus, a consideration of the relevance of any extrinsic evidence about the grantors' actual intent starts with an understanding that it was Panetta who should have been viewed as seeking reformation of the deed in order to have the riparian grant excluded. In other words, it was Panetta who was obligated to persuade the court, by clear and convincing evidence, that the clear understanding of the deed  as illuminated by N.J.S.A. 46:3-16  should be disregarded because it resulted either from a mutual mistake of the Francis group and Equity One, or from the Francis group's fraud. See, e.g., St. Pius X House of Retreats v. Camden Diocese, 88 N.J. 571, 580-81, 443 A.2d 1052 (1982). The factual record precludes any such conclusion.[9] George Francis's unshared knowledge about the existence of the riparian grant and its separate existence on the municipality's tax map was insufficient to warrant a reformation of the deed such as would permit the Chancery judge to conclude that the deed should be reformed to exclude the riparian rights.

C
We lastly observe, in considering how the deed in question should be interpreted, *1004 that our prior unpublished opinion did not foreclose a future analysis of N.J.S.A. 46:3-16 or its application to this case. In our earlier decision, we did not resolve how the deed should be interpreted, nor did we require that the Chancery judge interpret the 1995 deed in any particular way. Instead, we held that the interpretation of the deed, by whatever means were appropriate, had to await the joinder of persons who were not then parties to the action.

III
Since we have concluded that the deed in question, by operation of law, included the riparian grant that was appurtenant to the upland property, it follows that the judgment of foreclosure entered in favor of Equity One also included not only the upland property but also the appurtenant riparian rights. The sheriff's sale that followed caused the transfer of all of 633 Point Avenue  both the upland property and the riparian rights  to Equity One when it purchased the property at the sheriff's sale. See Friedman, supra, 258 N.J.Super. at 545, 610 A.2d 885. And, for the same reasons, we conclude that Equity One also held legal title to the upland property and the riparian rights when it attempted to sell the property to the highest bidding plaintiff in July 1997.
But we reject the notion that it follows, a fortiori, that Covey's bid, which was the highest bid, and which must now be viewed as conforming because its description of the property matched what Equity One had offered to sell, gave rise to an enforceable contract that Equity One ought to be directed to specifically perform. While the litigation process that has led to this point has resulted in a determination that, by operation of law, Equity One held title to both the upland lot and the appurtenant riparian rights, this possibility was not clearly understood by the parties at the time of the 1997 auction of the property. Instead, the content of the bids submitted to Equity One at that time indicated that the bidders did not share the same understanding of what was then being sold.
Moreover, even if we were to conclude  in the face of this confusion about what was being sold in 1997  that Covey and Equity One entered into an enforceable contract as a result of Covey's submission of the highest bid, there could be little doubt but that it would be inequitable to compel Equity One to perform that contract in light of the latter's understandable confusion about what it was that it was attempting to sell. See Marioni v. 94 Broadway, Inc., 374 N.J.Super. 588, 600, 866 A.2d 208 (App.Div.2005).

IV
For these reasons, the judgment will be affirmed insofar as it dismissed Covey's fraud and misrepresentation claims against Equity One, but otherwise reversed. The matter will be remanded for (1) a dismissal of all claims that seek specific performance or that rely upon a contention that the plaintiff possesses enforceable contract rights; (2) the entry of a declaratory judgment, in recordable form, that Equity One holds legal title to the entirety of 633 Point Avenue, including the upland property as well as the riparian grant; (3) a dismissal of all other claims not previously disposed of that cannot stand in light of this decision; and (4) an adjudication of any remaining claims not previously disposed of, but only "rescheduled," that are not dependent upon any of the claims that were either previously dismissed or which must be dismissed in light of this decision.
NOTES
[1] The record contains an earlier deed that would suggest that the property first came into the possession of the Francis family in 1943.
[2] The mortgage contained a general description of the property encumbered that should be construed, as we explain in our construction of the deed described later in this opinion, to include the riparian grant. That is, the mortgage states that the property encumbered was 633 Point Avenue "TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property."
[3] Anne Covey v. Equity One, Inc., Joseph D. Corvaia, and Howard Smith, Docket No. OCN-C-140-97.
[4] Joseph Panetta v. Equity One, Inc., Docket No. OCN-C-150-97; Dennis McKenna and Dorothy McKenna v. Equity One, Inc., Docket No. OCN-C-8-98 (they originally filed the complaint in the Law Division under Docket No. OCN-L-3074-97).
[5] Panetta v. Equity One, Inc., Docket No. A-4930-00T2.
[6] An "Appurtenance" is generally understood in this context as "[s]omething that belongs or is attached to something else." Black's Law Dictionary 103 (8th ed.2004).
[7] In Vagnoni, the owners of property that included riparian rights conveyed all this property to Heritage Home, Inc. as security for Heritage's construction of a residence for them on the upland property. When Heritage conveyed the property back, the deed's description did not include the riparian rights that had been previously conveyed along with the upland property to Heritage. While Judge Gibson did find that the deed was ambiguous and the parties had no intention that Heritage would retain the rights to the waterway, it is clear that those findings were dictum since Judge Gibson, in citing N.J.S.A. 46:3-16, also correctly recognized that this intention was consistent with what was implicitly contained in the conveyance despite the silence of the deed. 251 N.J.Super. at 410, 598 A.2d 530.
[8] In Karam, we observed that the upland and riparian parcels there involved "have consistently been delineated as separate lots on the municipal tax map," but did not determine whether this was significant because we found more substance in the fact that "in the various deeds executed over the years, the grant required common ownership of the lands or the right to the tide-flowed property would become void." 308 N.J.Super. at 230, 705 A.2d 1221. Here, there is no express language in any of the deeds in the record on appeal that linked the upland property and the riparian grant in the same way as in the circumstances examined in Karam. Other than the deeds executed in the 1990's that we have already discussed, the record contains only the 1943 deed that originally conveyed both the upland property and the riparian grant to the Francis family. That deed, as well as the others, contains none of the language that existed in the deeds in Karam. Because of N.J.S.A. 46:3-16, however, we conclude that the deed language discussed in Karam is not required to link these property interests.
[9] Having said that, we observe that this action did not turn on the application of the burden of persuasion. The parties either stipulated to the facts or agreed that the judge's findings could be based solely on what the deposition testimony and the documents in evidence revealed. See Bussell v. DeWalt Products Corp., 259 N.J.Super. 499, 513-14, 614 A.2d 622 (App.Div.1992), certif. denied, 133 N.J. 431, 627 A.2d 1137 (1993).